This is a workmen's compensation case.
After an ore tenus hearing, the Tuscaloosa County Circuit Court awarded seventy-five percent permanent partial disability compensation to the employee. The employer appeals, and we reverse.
The sole contention on appeal is whether the trial court erred in not properly considering the employee's pre-existing back disability within the context of Ala. Code (1975), §§25-5-57 (a)(4)e. and 25-5-58. *Page 70 
Viewing the record with the attendant presumptions, we find the following is pertinently revealed:
The employee, Bethany Junkins, on February 24, 1982, while employed with Druid City Hospital suffered an injury on the job while acting within the line and scope of her employment. Junkins's injury was to her back; specifically, the injury involved "lumbosacral strain, back pain, pain in both legs, herniated lumbar discs and laminectomies at L4-5, L5-S1, L5-L6, and L6-S1, recurrent lumbar disc, and S1, S2 root adhesions."
A settlement was reached between the parties on May 15, 1984, and it was agreed that Junkins had suffered a fifty percent permanent partial disability. Junkins was awarded a lump sum settlement, with future medicals left open.
In April of 1984, Junkins was allowed by hospital officials and her personal physician, Dr. Fernandez, to return to work. Junkins was reinstated as an employee in the ultrasound department due to limitations on her lifting of weight. However, in June of 1984 Junkins was transferred within the hospital to her former position in the emergency room. The limitations on her lifting of weight were removed by Dr. Fernandez due to the hospital's reluctance to allow the transfer if Junkins was still limited. On September 5, 1984, Junkins reinjured her back during the course of lifting a patient. This back injury suffered by Junkins was diagnosed by Dr. Fernandez as "an aggravation of a pre-existing condition."
At the outset, we would note that the standard of review in a workmen's compensation case is very narrow. Our review is limited to whether there is any legal evidence to support the findings of the trial court. Co-op Pulpwood Co. v. Partridge,486 So.2d 1293 (Ala.Civ.App. 1986); Padgett v. InternationalPaper Co., 470 So.2d 1287 (Ala.Civ.App. 1985). However, this court may examine the trial court's application of the law to the facts of the case. See Allen v. Metro Contract Services,Inc., 421 So.2d 1289 (Ala.Civ.App. 1982).
As we have noted earlier, the employer contends that the trial court erred in not considering the employee's prior condition. Specifically, the employer argues that the trial court erred in not considering Ala. Code (1975), §§ 25-5-57
(a)(4)e. and 25-5-58. The employer argues that these code sections would limit its liability to only any increased disability suffered by the employee from that existing prior to her injury of September 5, 1984.
These code sections cited by the employer stand basically for the same proposition: consideration of a prior disability for purposes of not paying for the same injury twice. Ala. Code (1975), § 25-5-57 (a)(4)e., states as follows:
 "e. Second Permanent Injuries Generally. — If an employee has a permanent disability or has previously sustained another injury than that in which he received a subsequent permanent injury by accident, such as is specified in the provisions of this section defining permanent injury, he shall be entitled to compensation only for the degree of injury that would have resulted from the latter accident if the earlier disability or injury had not existed."
Additionally, Ala. Code (1975), § 25-5-58, provides:
 "If the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity, the employer shall be liable only for the disability that would have resulted from the accident had the earlier injury or infirmity not existed."
These two code sections have been construed by this court in our earlier opinions in Lewis v. 4-E Corporation, 469 So.2d 594
(Ala.Civ.App. 1984); McKinney Petroleum Equipment, Inc. v.Connell, 453 So.2d 1044 (Ala.Civ.App. 1984); and Thompson andCompany Contractors v. Cole, 391 So.2d 1042 (Ala.Civ.App. 1980).
In Thompson we noted the following in our application of the above-cited statutes: "The key words in these two Code sections are `disability' and `infirmity.' These terms *Page 71 
refer to a condition which affects the ability to work as a normal man at the time of and prior to the accident." (Citations omitted.) Thompson, 391 So.2d at 1045. In the case at bar the evidence is unequivocally clear that Junkins returned to her work with a disability. It is impossible for this court to arrive at any other conclusion, given the evidence presented in this case. We find particularly revealing that testimony of the employee's own personal physician, Dr. Fernandez, who had treated the employee since her first injury in February of 1982. The following testimony of Dr. Fernandez reveals the disability under which the employee returned to work:
 "Q. Now, did you say that one of the reasons for a 50 percent disability rating is that a person who has had four surgeries is a person who is apt to have reoccurrences of pain?
"A. Recurrence of trouble.
"Q. Of trouble?
 "A. Of trouble in the future. I think she has — She has a better than even chance of having further trouble if she does any type of heavy lifting whatsoever.
"Q. Or bends the wrong way?
"A. Or bends. It could happen without any bending.
"Q. It could just flare up?
"A. Yes. She just has a bad back.
 "Q. And if she didn't already have the four surgeries and prior back problems, it's not likely that she would have had any disability from the recent incident, is it?
 "A. I would say that the odds were that she would have done fairly well from just one single lumbrosacral strain that occurred.
 "Q. If she had not already had adhesions and all these problems?
 "A. Or the other problems, yes. I think Ms. Junkins' basic and main problem is the pre-existing condition. It was just aggravated by this last episode."
Further, we find from Dr. Fernandez's testimony evidence that suggests that the very disability under which the employee returned to work may have been the culprit with regard to her injury in September of 1984:
 "Q. So you don't think that she has any new ruptured discs?
 "A. No. I do not feel that she has a new ruptured disc, no, sir.
 "Q. What she has are adhesions, and the adhesions that resulted from the surgery which followed the incident of February '82, right?
"A. That is correct.
 "Q. Those adhesions had been growing ever since each one of those operations in '82 and '83?
"A. Well, they don't grow like trees.
 "Q. Well, that's what I was trying to find out a while ago.
 "A. No. They don't grow like trees. I mean, it just gets to a certain point and they'll have no room to grow. But it creates the problem of preventing mobility of the nerve root.
"Q. She has had no surgery since September of '84?
"A. No, sir.
"Q. So the adhesions are old adhesions?
 "A. Old adhesions, yes. If I continue, it shows that her CT had no change in '84 from the last one done in '83.
"Q. So there's nothing new really?
"A. Nothing new as far as other than the pain part."
The evidence in the case at bar is clear that Junkins suffered from a disability prior to her September 5, 1984, injury. While it is true that she had returned to work, she had done so only with specific limitations placed upon her. She was not allowed to return to her old position, but was placed in the ultrasound department, where she could work within her limitations.
While we note that she subsequently transferred to the emergency room, with all limitations removed, she reinjured her back after only three months of work.
The case at bar is to be distinguished from McKinneyPetroleum Equipment, *Page 72 Inc. v. Connell, 453 So.2d 1044 (Ala.Civ.App. 1984). In Connell
the employee had enjoyed a full recovery from his prior back injury before suffering another injury. Additionally, inConnell the employee was actively engaging in sports and had returned to his employment for more than a year without limitations or restrictions.
The case at bar is distinguishable in that Junkins had undergone two years of extensive treatment and therapy for her injury in 1982. This treatment, which included four surgeries, had offered little relief until February of 1984 when Junkins claims that she experienced her recovery.
Junkins's recovery must be viewed with more than a little skepticism in light of the facts as outlined here today. The evidence supports her physician's statement that she has "just a bad back." We agree and conclude that she returned to her employment with that "bad back." We, therefore, have no alternative but to find the learned trial judge in error for his failure to apply Ala. Code (1975), §§ 25-5-57 (a)(4)e. and25-5-58. We, therefore, must reverse and remand for proceedings not inconsistent with the above.
This case is due to be, and it is, therefore, reversed and remanded.
REVERSED AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur.