THIGPEN, Judge.
This is a workmen’s compensation ease.
Upon receiving ore tenus evidence, the trial court found that the injury suffered by Tim G. Dempsey was not job-related, and that Dempsey had not suffered any loss of earning ability.
Dempsey’s claim for workmen’s compensation benefits against his employer, White Consolidated Industries, Inc. (White), was disputed by- White. Following a trial in November 1991, the trial court found that Dempsey had been seriously injured in an automobile accident in 1973, which required a complete hip replacement to the right side. After this prosthesis was installed, Dempsey resumed normal physical activity, including strenuous activity.
Dempsey testified that on December 5, 1986, he worked on White’s assembly line. At the end of his shift, he was walking across a steel bridge over a conveyor belt toward the time clock when he stepped on a spot of grease, and this caused him to fall to the concrete floor below. He felt a sharp pain in his right hip and leg, but he proceeded to the time clock, clocked out, and went home. He later went to an emergency room for treatment, and he was later seen and treated by various physicians, including orthopedic surgeons. The record reveals that Dempsey originally told two of his physicians that he “took a hard step” but that he did not actually fall. Later, however, Dempsey stated that he had fallen eight feet from the top of the walkway to the concrete floor. The trial court found that the evidence, including photographs of the scene, was inconsistent with Dempsey’s testimony regarding the fall. While the treating physician indicated that Dempsey had a physical impairment rating of 60% to the leg and 24% to the body as a whole, nevertheless he and another orthopedic surgeon agreed that the severe injury in 1973 which resulted in the original hip replacement was an extremely significant factor as to Dempsey’s present impairment. At least one physician who examined Dempsey testified that Dempsey was physically able to perform the same work as prior to his injury, and that he could return to his usual employment. Upon review of a videotape taken while Dempsey was under surveillance, the trial court concluded that “it was obvious that [Dempsey] was able to drive, walk substantial distances, stand and sit for extended periods, all without indication of any significant degree of difficulty other than a pronounced limp.” The trial court reviewed the deposition testimony of a vocational expert who opined that Dempsey was permanently and totally disabled in that he was unable to sit or stand for any extended period of time and was not physically able to return to his prior employment or work a normal work schedule. The trial court found that this conclusion was not substantiated by the evidence. Based upon *40 these findings, the trial court concluded, after a review of all the evidence, that Dempsey did not suffer “a compensable further injury as a result of the accident as alleged nor that he has suffered any loss of his ability to earn wages as a result thereof that has not already been paid by the Defendant.” Accordingly, judgment was entered for White and against Dempsey. Upon a denial of timely post-judgment motions, Dempsey appeals, asserting that the trial court erred in construing Dempsey’s prior injury as pre-existing for purposes of the workmen’s compensation law, where the evidence was undisputed that the injury had neither demonstrated itself as disabling nor prevented Dempsey from performing his work in a normal manner; that the trial court improperly considered and gave great weight to vocational evidence from an unqualified medical doctor; and that the trial court’s findings of facts and conclusions of law are not supported by any reasonable view of the evidence.
Our standard of review in workmen’s compensation cases is two-fold. First, we look to see if there is any legal evidence to support the trial court’s findings, and if such evidence is found, then we must determine whether any reasonable view of that evidence supports the trial court’s judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991).
Regarding Dempsey’s first contention, Ala.Code 1975, § 25-5-58, provides:
“If the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity, the employer shall be liable only for the disability that would have resulted from the accident had the earlier injury or infirmity not existed.”
Pre-existing conditions do not affect an award of compensation if the on-the-job injury combined with the pre-exist-ing condition to produce a disability. Allen v. Metro Contract Services, Inc., 421 So.2d 1289 (Ala.Civ.App.1982). Further, if the evidence establishes that a pre-existing injury or condition is the root of a disability, and not a work-related accident, then the trial court is justified in determining that the employee suffered no compensable disability. Wilson v. Berry Industries Co., 451 So.2d 339 (Ala.Civ.App.1984). In the ease at bar, the evidence is vague regarding whether Dempsey’s injury resulted from the alleged accident or as a consequence of normal deterioration. There is evidence that Dempsey suffered an accident in 1973 which required a complete hip replacement in 1975. When questioned on cross-examination, Dempsey’s treating physician was asked:
“Q. Doctor, would a break in the stem of a prosthesis be consistent with the aging processes as you described it?
[[Image here]]
“A. Yes. I think that a break in the stem of the prosthesis would be.”
Later, during the same colloquy, the doctor was asked:
“Q. Is that fracture as you have now described it consistent with the aging process as you have described it?
[[Image here]]
“A. I would just look at this and say that it does not look to me like cement loosening has occurred to any degree in the femoral side. It has in the acetabu-lar side. It looks to me like the fatiguing of this metal is more the result of metal failure than it is cement failure. So the usual process of cement loosening followed by metal fracturing would not be the case here. I think this would tend to be more just a wear process than it would be a cement failure process.”
On re-direct, while the doctor testified that, in his opinion, the fracture of the metal occurred at the time of the alleged work-related injury, nevertheless he further stated:
“I do feel like that the problem with the metal, as you say, is the problem with any metal, that there is a life span of any metal. And I think that probably this was about — If he hadn’t fallen, the metal would have cracked sometime down the road anyway.”
The medical records disclose that at the time Dempsey first reported his injury to the physicians, he described the injury as *41 having occurred on “steps going over [the conveyor] in Dept. #22 ... did not fall just twisted legs.” Later, the physician’s notes disclose that Dempsey stated he “did not fall but he stepped down very hard and had the immediate onset of pain in his right knee.”
The medical records also reveal that he had suffered a fracture of his hip prosthesis at the junction between the stem and the neck of the prosthesis, which resulted in two additional surgeries and a total replacement prosthesis. In deposition and at trial, Dempsey described his injury as the result of a fall of some eight feet to a concrete floor. In deposition, Dempsey described having slipped on some grease on the floor of a steel bridge which traverses a conveyor belt. Dempsey stated:
“And when I got on top of it, it was a large wad of grease where the man that greased the machines evidently had dropped that, I don’t know where it came from, that’s my guess because it was so large, and I hit it and went off the top and hit the cement floor below.”
He described the pain on impact as a “real sharp pain” through “the hip and leg” which was continuous. At trial, he testified that another employee, whom Dempsey could not identify, offered to help him; however, he is unsure whether she helped him to stand or if he stood up by himself. During his deposition, Dempsey stated that a man and woman helped him to the time clock. Neither of these witnesses was identified or called to testify.
Dempsey did not immediately report the injury, but he went straight home and to bed. After sleeping approximately six hours, he sought medical attention and attempted to report the injury.
At trial, Dempsey described the fall as having occurred when he was on top of the platform “next to being to the end of the main platform before I started down is when I slipped, then, I went off the whole platform not touching it none, none of the steps, I landed on my feet on the cement floor and when I did I twisted and fell back on my bottom.”
Thus, if the trial court determined that the pre-existing condition was the root of the disability, and that the accident, if any, while working for White did not contribute to it, Dempsey suffered no compensable disability. Wilson, supra.
The trial court reviewed videotape recordings of Dempsey performing certain physical tasks which he had testified he could not perform. Based upon all the evidence, the trial court concluded that Dempsey had not incurred a further com-pensable injury. There was conflicting evidence, which the trial court resolved. Jones v. LeFlore, 421 So.2d 1287 (Ala.Civ.App.1982). It is undisputed that Dempsey presently suffers some disability; however, after considering conflicting evidence, the trial court determined that the impairment was not the result of a work-related injury. The trial court has wide discretion in reaching its conclusions. It is not bound by expert testimony but must consider all of the evidence, including its own observations, and interpret it to its own best judgment. Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App.1988).
There was evidence to support the trial court’s conclusion that Dempsey had not suffered a compensable injury. Further, a reasonable view of that evidence supports the trial court’s judgment. At least one of the physicians testified that Dempsey could resume work as before, and the videotapes indicate that he is capable of performing physical tasks far beyond those to which he testified. Additionally, Dempsey’s descriptions of the alleged accident do not appear to be consistent with the evidence. While there was expert testimony regarding total disability, the mere fact that a trial court does not choose to base its judgment on such testimony is not sufficient to require reversal. The weight of the evidence is for the trial court. Crown Textile Co. v. Dial, 507 So.2d 522 (Ala.Civ.App.1987). A trial court is simply not bound by the opinions of expert witnesses, even if that testimony is uncontroverted. Rogers v. Chrysler Motors Corp., 587 So.2d 367 (Ala.Civ.App.1991).
*42 For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.