James Allen Cobb sued his former employer, Coyne Cylinder Company, seeking to recover workers' compensation benefits. After a trial, the court found that Cobb had suffered an on-the-job injury on April 23, 1996, and awarded him medical expenses related to the accident. However, the trial court also found that at the time of that accident, Cobb had a preexisting condition that prevented him from performing his duties without modification. The trial court further found that Cobb did not sustain a permanent partial *Page 220 
disability as the result of his April 23 injury; that the April 23 injury did not exacerbate the preexisting condition; and that Cobb did not suffer any loss of earning capacity from that injury. Cobb appeals.
The evidence adduced at trial tended to show the following. During his tenure at Coyne, Cobb sustained a number of injuries that were covered by workers' compensation. Cobb testified that as a result of a 1993 accident, he was left with a 50% impairment to his left hand and a 45% impairment to his left arm. His doctor at that time permanently restricted him from lifting more than 10 pounds with his left arm, and he could no longer use vibratory tools or air tools.
Cobb suffered another work-related accident in September 1994, in which Cobb injured his neck, right shoulder, and right arm. Two cervical fusions were performed; however, Cobb was left with a 12% permanent impairment to his body as a whole. At that time, Dr. Zenko Hrynkiw imposed another permanent restriction on Cobb, telling him he could lift no more than 20 pounds.
In November 1995, Cobb filed a claim against Coyne pursuant to the Americans with Disabilities Act. Cobb maintains that the physical impairments he had suffered by November 1995 had substantially limited his ability to push, pull, lift, or carry, and that restrictions placed on him because of his disability limit his ability to work by foreclosing a broad range of jobs that he could perform before he became disabled.
Between the September 1994 injury and the April 1996 injury, Cobb returned to work at Coyne, but he continued to be treated for pain. In October 1995, six months before the accident resulting in this case, Cobb wrote to his employer, requesting a supervisor's position. Among the reasons Cobb gave in requesting the job were that his disabilities were causing him both physical and mental pain and that the work restrictions placedon him had caused him to lose money.
On April 23, 1996, the date of his most recent injury, Cobb was working as a material handler on the paint line. Cobb testified that in that job he was not allowed to hang weights, hydraulic lifts, or "stuff." He said he would get "the stuff ready and then they [Coyne] had other people to hang them." He did not admit, however, that the job had been modified for him.
On April 23, 1996, Cobb was pushing a rack of cylinders that fell over, injuring his right shoulder. He was sent to a doctor at Occupational Health Services that day, but he returned to work on light duty the next day. On that next day, however, all of Coyne's employees' jobs were terminated because the company had been sold.
Cobb went to see Dr. Ray Fambrough, an orthopedic physician, for treatment of his latest injury. Dr. Fambrough diagnosed Cobb as having "an obvious impingement syndrome on the right [shoulder] that is very mild," and Dr. Fambrough concluded: "He has no weakness of external rotation power. He has a full range of active and passive motion of his shoulder. X-rays of his shoulder are essentially normal." Dr. Fambrough testified that impingement syndrome is the same as rotator cuff tendinitis or bursitis of the shoulder. He said the condition usually lasts from three to six months, and during that time he would restrict Cobb from doing any overhead work. Dr. Fambrough went on to say that he usually does not assign a permanent impairment rating for someone with impingement syndrome, and he believed that much of Cobb's pain was related to his earlier neck injury.
Dr. Hrynkiw, who had treated Cobb for his earlier neck injury, testified that he saw Cobb again after the April 1996 injury to his shoulder. He testified that diagnostic testing performed on Cobb at that time did not reveal any new injury. Just as Dr. Fambrough opined, Dr. Hrynkiw testified that he believed that Cobb's pain was related to continuing problems caused by his previous neck injury.
Cobb contends that the trial court's finding that he had suffered a new injury but that he had suffered no permanent impairment as a result of that injury is not supported by substantial evidence. The standard of review this court must apply in this case is derived from § 25-5-81(e)(1), Ala. Code 1975, which provides: "In reviewing the standard of proof set forth herein and other legal *Page 221 
issues, review by the Court of Civil Appeals shall be without a presumption of correctness." Furthermore, the Workers' Compensation Act provides that "in reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." § 25-5-81(e)(2). The Alabama Supreme Court has defined "substantial evidence" as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989); Ex parteTrinity Industries, Inc., 680 So.2d 262, 268 (Ala. 1996).
We are mindful that the Workers' Compensation Act is to be liberally construed to accomplish its beneficent purposes and that doubts must be resolved in favor of the employee.Scott Paper Co. v. Smith, 600 So.2d 269
(Ala.Civ.App. 1992). However, "a trial court's factual findings based upon conflicting ore tenus evidence will not be disturbed on appeal unless such findings are clearly erroneous or manifestly unjust." Webb Oil Co. v. Holmes,660 So.2d 1316, 1319 (Ala.Civ.App. 1995). It is the duty of the trial court, which had the opportunity to observe the witnesses and their demeanor, and not the appellate court, to weigh the evidence presented. Id. In its judgment, the trial court specifically pointed out that in reaching its decision, it had carefully considered its observation of Cobb throughout the trial.
A preexisting condition that did not affect the employee's work performance before the disabling injury is not considered a preexisting condition for purposes of the Workers' Compensation Act. Waters v. Alabama Farmers Co-op., Inc.,681 So.2d 622 (Ala.Civ.App. 1996). Cobb argues that he did not have a preexisting condition for workers' compensation purposes because he had returned to Coyne after his 1994 accident and was, he says, performing his job without modification. However, substantial evidence in the record suggests otherwise. Cobb himself testified that he would prepare the "stuff" he worked with, but that other employees would have to hang it for him. He also testified that Coyne would not allow him to hang weights and hydraulic lifts. Cobb requested a different position because he claimed that the job he was performing caused him physical and mental pain. He even filed a lawsuit pursuant to the ADA claiming his disabilities had substantially limited his ability to work. From this evidence, the trial court could reasonably infer that Cobb did have a preexisting condition that was affecting his work performance even before the April 23, 1996, accident.
In addition, the medical testimony in this case indicated that Cobb had not sustained a new injury that had permanently impaired him. There is substantial evidence to support the conclusion that Cobb's current problems are the result of his 1994 neck injury. The record shows that Cobb, who is enrolled at a community college now, has not returned to work since Coyne dismissed all its employees on April 24, 1996. However, there is no medical evidence to suggest that Cobb's injury is the reason for his not working. The record shows that he did return to work, albeit on light duty, the day after the injury; however, that was the same day that Coyne terminated the jobs of all of its employees. Furthermore, Dr. Fambrough said that the only restriction he would have placed on Cobb was that he do no overhead work for three to six months.
Although Cobb still experiences pain in his right shoulder, the trial court had before it substantial evidence from which it could reasonably infer that the 1994 accident, and not the 1996 accident, was the cause of that pain. Based on the evidence presented, we cannot say that the trial court's judgment finding that the 1996 accident did not permanently impair Cobb and that it did not result in a loss of earning capacity is clearly erroneous or manifestly unjust.
The judgment is affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur. *Page 222