MONROE, Judge.
Clarence Proctor (“the employee”) appeals from the trial court’s judgment finding that he had not suffered a compensable disability and was not entitled to recover workers’ compensation benefits from his employer, R.R. Dawson Bridge Company (“the employer”).
In August 1996, the employee began working for the employer as a welder/carpenter/laborer. As a welder, his duties included welding road iron to gussets on the decking of a bridge.
The employee testified that on June 24, 1997, while welding, he began experiencing the symptoms of heat exhaustion — dizziness, weakness, headaches, nausea, cramps, chest pains, heavy breathing, and sweating. The employee testified that the weather was hot and humid, that the welding' equipment was producing heát, and that he was required to wear long sleeves, gloves, and other welding garb. The employee returned to work the next day, June 25, but was unable to complete the day’s work because he once again began to experience the symptoms of heat exhaustion. That was the last day the employee worked for the employer.
On June 26, 1997, the employee sought medical treatment from Dr. Ivana Kajdos, who had been his family doctor since December 1995. Dr. Kajdos diagnosed the employee as suffering from heal exhaustion. In a letter dated July 30, 1997, Dr. Kajdos stated:
“It is my strong conviction that [the employee] does not have the ability to tolerate such extreme environmental conditions and that any future exposure to such, that is extreme heat associated with physical exertion, could pose a significant health threat to him. In view of his limited education, age, and the above presented medical conditions, I believe [that the employee] is totally unable to keep a regular job within his capacity.”
In another letter, dated September 4, 1997, Dr. Kajdos stated, “I strongly believe that [the employee] is totally disabled at this point to keep any regular job.”
In January 1998, the employee sued for workers’ compensation benefits. After a trial, the court issued a judgment holding that the employee was not entitled to workers’ compensation benefits. The employee appealed.
The'standard of review this court must apply in this case is derived from § 25-5-81(e)(1), Ala.Code 1975, which provides: “In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.” Furthermore, the Workers’ Compensation Act provides that “[i]n reviewing pure findings of fact, the'finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” § 25- *448 5-81(e)(2). The Alabama Supreme Court has defined “substantial evidence” as “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); Ex parte Trinity Industries, Inc., 680 So.2d 262, 268 (Ala.1996).
The employee argues that the trial court should have determined that he suffered a compensable injury because, he says, Dr. Kajdos testified in her deposition that the employee’s episodes of heat exhaustion in June 1997 triggered the present disabled condition the employee claims to have. Dr. Kajdos testified that before June 1997 the employee “seemed like a regular working guy who needed treatment for [high] blood pressure and emphysema,” that the employee’s “chronic medical conditions ... were maintained” by occasional visits to her, and that “since the June ’97 visit that [the employee] simply markedly deteriorated overall.” In her deposition, Dr. Kaj-dos stated:
“The best I can put it with the most professional honesty, that I can testify that starting with that disorder, I have seen remarkable declination of [the employee’s] health. I cannot medically prove or objectively provide tests which will without any reasonable doubt say that only the heat exhaustion caused all of it. In my medical opinion, it has started declination, crumbling down of a system which was diseased before with smoking, emphysema, atherosclerosis, high blood pressure. And this was a trigger point, trigger situation, which perhaps started the avalanche of events that his substructure collapsed, mentally and physically.
“Given otherwise, heat exhaustion is a treatable condition, which most basically healthy people recover from and he was no basically healthy person. He tolerated his work up to that point and after this extreme exposure, all I can say, I have seen him decline and not respond like he did before with no other explanation to offer.”
At trial, the employee testified that before June 24, 1997, he had never had any problems working in the heat and that since the episodes of heat exhaustion on June 24 and 25, 1997, he has suffered from fatigue, dizziness, chest pains, nausea, headaches, shortness of breath, coughing, and sweating. The employee testified that before June 24, 1997, he did not suffer from chest pains, nausea, stomach problems, emphysema, coughing, wheezing, or shortness of breath, that he was not aware that he had emphysema, and that he had never been treated for emphysema.
Dr. Kajdos testified that the employee was suffering from emphysema in December 1995, when she first began treating him. Additionally, two of the employee’s coworkers at R.R. Dawson Bridge Company disputed the employee’s claims that he had never experienced any of his present problems before June 1997. The coworkers testified that before June 24, 1997, the employee took Mylanta frequently and that he complained that he was nauseated and that his stomach hurt. The coworkers also testified that the employee, who is a smoker, took “a bunch of breaks,” that he coughed and wheezed, and that he sweated even in the cooler months. The coworkers also disputed the employee’s claim that he wore long sleeves and welding gloves when welding. The coworkers testified that the employee did not wear gloves when welding and that he wore overalls and a T-shirt, not long sleeves.
Dr. Kajdos admitted that her opinion that the episodes of heat exhaustion in June 1997 triggered the employee’s present disabled condition is based upon the employee’s assertion that his symptoms did. not appear until the episodes of heat exhaustion in June 1997. Dr. Kajdos conceded that if the symptoms experienced by the employee were present before the episodes of heat exhaustion, then she would *449 need to search for other causes for the employee’s present complaints.
In Lindsey v. Watson Van Lines, 122 So.2d 774, 776 (Ala.Civ.App.1998), this court stated:
“A trial court’s factual findings based upon conflicting ore tenus evidence will not be disturbed on appeal unless such findings are ‘clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.’ American Petroleum Equipment [ & Construction, Inc.] v. Fancher, 708 So.2d 129, 132 (Ala.1997). It is the duty of the trial court, which has the opportunity to observe witnesses and their demeanors, and not the appellate court, to weigh the evidence presented. Webb Oil Co. v. Holmes, 660 So.2d 1316 (Ala.Civ.App.1995).”
In light of the foregoing, we conclude that there was substantial evidence to support the trial court’s finding that the employee did not sustain a compensable injury. The trial court’s judgment is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur.