Gladys Jackson sued her employer, General Motors Corporation, on April 5, 1999, seeking to recover workers' compensation benefits for injuries she claimed to have sustained to her "arms, wrists and hands" during the course of her employment with General Motors. On April 15, 1999, Jackson amended her complaint to allege additional injuries to her shoulders and neck. Following an ore tenus proceeding, the trial court, on January 8, 2001, entered an order, reading in part as follows:
 "The defendant raised issues of causation, statute of limitations and pre-existing condition. The Court is satisfied by clear and convincing evidence that the plaintiff did, in fact, suffer cumulative trauma injuries to her hands, forearms, left elbow, right shoulder, and neck arising out of and in the course of her employment as a furnace operator. The injuries resulted in the plaintiff's permanent and total disability. The date of the plaintiff's last exposure to the injurious job was April 13, 1999, which was the date the plaintiff last worked for the defendant. Therefore, the plaintiff's claim is not barred by the statute of limitations. The injuries to the plaintiff's left elbow and neck were not pre-existing. The plaintiff's work aggravated, accelerated or combined with the injuries to her forearms and hands and the injury to her right shoulder to produce her disability. For this reason, these pre-existing conditions do not disqualify the plaintiff's claim. Additionally, at the time of the September 1, 1998, injuries the plaintiff was performing her duties as furnace operator without restrictions. Therefore, no pre-existing condition was present for purposes of the Workers' Compensation Law.
 "The Court nevertheless finds that the defendant is due a credit for the lump sum payment it made to the plaintiff in 1997 in the amount of $48,000. The payment was in settlement of a workers' compensation claim filed by the plaintiff in 1993 arising from injuries to both arms diagnosed as bilateral carpal tunnel syndrome. According to the defendant, the lump sum settlement was based on an approximate vocational disability of 26%. The Court finds that the defendant is therefore entitled to offset the $48,000 payment at the rate of 26% of the installments of permanent total disability benefits due the plaintiff."
General Motors appeals; Jackson cross-appeals.
This case is governed by the 1992 Workers' Compensation Act. This Act provides that an appellate court's review of the standard of proof and its consideration of other legal issues shall be without a *Page 697 
presumption of correctness. § 25-5-81(e)(1), Ala. Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court "has defined the term `substantial evidence,' as it is used in §12-21-12(d), to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte TrinityIndus., Inc., 680 So.2d 262, 268 (Ala. 1996), quoting West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). This court has also concluded: "The new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. JesseStutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App. 1995).
Jackson was 56 years old at the time of trial and had a high school education. She had had no vocational or technical training. She was employed by General Motors in January 1985. She worked on the assembly line for six months and then was transferred to the "hardener," where she worked for six months. She was then transferred to the position of "straightener operator," at which job she was required repetitively to handle parts by moving them onto and off the "straightener machine" and then placing them into containers.
In 1991, as a result of her work at the "straightener- operator" position, Jackson developed carpal tunnel syndrome in both hands. Dr. Louis Horn III performed surgery on Jackson's hands in February and April 1992, to repair the carpal tunnel syndrome. Jackson testified that although she continued to experience symptoms following the surgery, her hands improved enough that she returned to her position as "straightener operator" without any restrictions.
Jackson subsequently began experiencing symptoms with her right and left elbows, with the symptoms being more severe in her right elbow. Jackson was seen by Dr. Victoria Masear in November 1992 and was diagnosed with cubital tunnel syndrome. Dr. Masear performed surgery on Jackson's right elbow on August 10, 1993.[1] On April 16, 1993, Jackson sued General Motors seeking to recover workers' compensation benefits for the injuries she had sustained during the course of her employment with General Motors.
Following the surgery to correct the cubital tunnel syndrome, Dr. Masear returned Jackson to work at General Motors, with a light-duty restriction. Jackson was transferred from her position of "straightener-operator" to the position of "furnace- operator." The "furnace-operator" position was a light-duty position. Jackson testified that it was the position with the lightest duty in her department. As a "furnace-operator," Jackson was required to load and unload parts, weighing between three and seven pounds, onto a conveyor belt to be fed into a furnace. Sometimes the parts would become tangled and jammed and Jackson would have to pull on the parts and sometimes use a hammer in order to dislodge the parts. Jackson testified that she was in General Motors' medical unit constantly, complaining of pain in her arms, hands, and shoulder. *Page 698 
Jackson was seen by Dr. Gilbert Melson on July 26, 1994; she was complaining of pain in her right shoulder that radiated into her neck and down into her arm. Dr. Melson testified that Jackson also complained of persistent symptoms related to her previous carpal tunnel syndrome and cubital tunnel syndrome. Dr. Melson diagnosed Jackson with impingement syndrome in the shoulder and with degenerative changes in her neck. Dr. Melson treated Jackson conservatively with medication, injections, and physical therapy. Jackson's condition did not improve, and she eventually elected to undergo surgery in March 1995; however, she was unable to have the surgery at that time, because of her high blood pressure.
On September 17, 1997, Jackson entered into an agreement with General Motors to settle the workers' compensation action she had filed in April 1993. The settlement agreement indicates that Dr. Horn assigned an impairment rating of 2% to Jackson's right hand and an impairment rating of 2% to her left hand. Dr. Masear assigned Jackson an impairment rating of 10% to Jackson's right hand, a 9% impairment rating to her arm, and a 5% impairment rating to the body as a whole. Jackson settled the claim for the injuries she had sustained to her right wrist, right elbow, left wrist, and left elbow, for $48,000, based upon a vocational-disability rating of 26%.
Jackson returned to Dr. Masear on August 17, 1998, with continued complaints of her carpal tunnel symptoms. Jackson informed Dr. Masear that her carpal tunnel symptoms had never completely resolved following the 1992 surgeries to her right and left hands and that the symptoms had recently worsened. Dr. Masear diagnosed Jackson with "recurrent or persistent" carpal tunnel syndrome in both hands. Dr. Masear also diagnosed Jackson with cubital tunnel syndrome in her left elbow. Dr. Masear performed surgery on Jackson on October 16, 1998, to repair the left carpal tunnel and left cubital tunnel syndrome. Dr. Masear performed surgery on December 11, 1998, to repair the right carpal tunnel syndrome. Dr. Masear determined that Jackson reached maximum medical improvement in March 1999 and assigned her an impairment rating of 14% to the left upper extremity, a 10% impairment rating to her right hand, and a 13% impairment rating to the whole body. Dr. Masear also imposed work restrictions of limited gripping and no repetitive motion.
Jackson also returned to Dr. Melson on August 27, 1998, with continued complaints of right-shoulder pain. Dr. Melson noted that Jackson's symptoms had worsened and again diagnosed her with right-shoulder impingement. Dr. Melson performed surgery on Jackson on May 5, 1999. Dr. Melson testified that Jackson's progress following the surgery was slow but that she did show improvement. Dr. Melson last saw Jackson on July 16, 1999, and noted at that time that she had some pain in her shoulder, which he characterized as a generalized soreness. Dr. Melson stated that he did not believe Jackson's shoulder injury would be disabling in and of itself.
Dr. John Bacon, on June 8, 1999, began treating Jackson for all of her injuries. He testified that she was totally disabled and that her work activities contributed to her injuries. Jackson was also evaluated by Dr. Lloyd Johnson on August 27, 1999. Dr. Johnson testified that Jackson was totally disabled and that her work activities contributed to her injuries.
General Motors argues on appeal that the trial court erred in failing to apply §§ 25-5-57(a)(4)e. and 25-5-58, Ala. Code 1975. We agree. Section 25-5-57(a)(4)e. provides: *Page 699 
 "e. Second Permanent Injuries Generally. If an employee has a permanent disability or has previously sustained another injury than that in which the employee received a subsequent permanent injury by accident, as is specified in this section defining permanent injury, the employee shall be entitled to compensation only for the degree of injury that would have resulted from the latter accident if the earlier disability or injury had not existed."
Section 25-5-58 provides:
 "If the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity, the employer shall be liable only for the disability that would have resulted from the accident had the earlier injury or infirmity not existed."
This court has stated:
 "These two Code sections have been construed by this court to mean that if the worker had fully recovered from his first injury, then that injury was no longer a factor in arriving at the percentage of ability to earn in his disabled condition. Wal-Mart Stores, Inc. v. Bratton, 678 So.2d 1071 (Ala.Civ.App. 1995), rev'd on other grounds, Ex parte Bratton, 678 So.2d 1079 (Ala. 1996); Blue Circle, Inc. v. Williams, 579 So.2d 630 (Ala.Civ.App. 1991); McKinney Petroleum Equipment, Inc. v. Connell, 453 So.2d 1044 (Ala.Civ.App. 1984); Thompson Co. Contractors v. Cole, 391 So.2d 1042 (Ala.Civ.App. 1980). However, if the worker had not fully recovered from the prior injury, §§ 25-5-57(a)(4)e. and 25-5-58 would limit the company's liability to only the increased disability suffered by the employee caused by the current injury. Druid City Hospital Regional Medical Center v. Junkins, 495 So.2d 69 (Ala.Civ.App. 1986). Thus, the dispositive issue is whether the worker had fully recovered from the earlier injury at the time of his current injury."
Champion Int'l Corp. v. Williams, 686 So.2d 1204, 1207 (Ala.Civ.App. 1996).
In Williams, supra, the employee injured his back in 1988 when he fell down a stairwell. The employee underwent back surgery in 1988 and 1990, as a result of the injury. The employee settled his workers' compensation claim, based on a 40% permanent-partial disability. Following the settlement, the employee returned to full-time work with the company until he suffered a second back injury in 1991 while lifting a piece of equipment. The employee was hospitalized and underwent a second back surgery as a result of the 1991 accident. In reversing the judgment of the trial court for failing to apply §§ 25-5-57(a)(4)e. and 25-5-58, this court noted the company's undisputed evidence and the employee's own testimony, which indicated
 "that at the time of the worker's injury in December 1991, the worker was on light duty because of his physical limitations and restrictions, that he regularly visited the company's doctor for pain, that he continued to have pain when he worked, and that he had not fully recovered from his 1988 injury."
Id., at 1208.
The evidence indicates that Jackson's carpal tunnel symptoms persisted following the initial surgeries performed by Dr. Horn in 1992. Jackson testified that she never fully recovered from those injuries. Dr. Masear's medical records contain a notation indicating that Jackson informed her on August 17, 1998, that the carpal tunnel symptoms had never completely resolved following the surgeries in 1992 and that they had recently worsened. Dr. Melson stated in his deposition that when he first evaluated Jackson in July 1994, *Page 700 
she complained of persistent carpal tunnel symptoms in both hands. Dr. Masear ultimately performed repeat carpal tunnel surgery on both hands in 1998.
Jackson also developed symptoms in her elbows, with the symptoms being more severe in her right elbow. Dr. Masear performed surgery on Jackson's right elbow in August 1993 and returned her to work on light duty. Jackson testified that she was placed in the position of "furnace-operator," which was the lightest work in her department. Jackson stated that after returning to work she was constantly visiting the company's medical department with complaints of pain in her arms, hands, and shoulder. Jackson's symptoms in her left elbow continued to progress to the point of requiring surgery. Dr. Masear performed surgery on Jackson's elbow in 1998. Jackson testified that the problem with her right elbow improved following the initial surgery, but that she has never fully recovered from the symptoms that she began experiencing with her left elbow in 1993.
Finally, Dr. Melson diagnosed Jackson with right-shoulder impingement syndrome in July 1994 and recommended surgery. However, Jackson was unable to undergo surgery at that time, because of high blood pressure. Jackson testified that her shoulder symptoms improved but then worsened. She returned to Dr. Melson in August 1998, and he again diagnosed her with right-shoulder impingement and performed surgery.
After carefully reviewing the record, we conclude that Jackson had not fully recovered from the injuries she had sustained to her upper extremities before September 1998. The record is replete with evidence indicating that Jackson still suffered from those injuries before September 1998, the date she alleges as the date she suffered the injuries made the basis of this action. Accordingly, the trial court erred in failing to apply §§ 25-5-57(a)(4)e. and 25-5-58 to determine the extent of General Motors' liability for the September 1998 injuries.
Jackson argues on cross-appeal that the trial court erred in giving General Motors a credit of $48,000, representing the settlement of her 1993 workers' compensation action. Because we are reversing the judgment of the trial court and remanding for that court to apply §§25-5-57(a)(4)e. and 25-5-58, we pretermit discussion of this issue.
REVERSED AND REMANDED.
Crawley, Thompson, Pittman, and Murdock, JJ., concur.
[1] Jackson testified at trial, and the parties state in their briefs, that Jackson's elbow problems began in late 1993 and that Dr. Masear performed surgery in 1994. However, these dates are directly contradicted by two vocational reports contained in the record, as well as by an excerpt from Dr. Masear's deposition, all of which indicate that Jackson was seen by Dr. Masear for her elbow problems in November 1992 and underwent surgery by Dr. Masear on August 10, 1993.