987 So.2d 598 (2007)
Efrain ALAMO
v.
PCH HOTELS AND RESORTS, INC., d/b/a/ Marriott's Grand Hotel.
2060560.
Court of Civil Appeals of Alabama.
December 14, 2007.
Richard E. Browning, Mobile, for appellant.
Ian D. Rosenthal and Joseph D. Stutz of Cabaniss, Johnston, Gardner, Dumas & O'Neal, LLP, Mobile, for appellee.
THOMPSON, Presiding Judge.
Efrain Alamo appeals from a judgment in favor of his employer, PCH Hotels and Resorts, Inc. d/b/a/ Marriott's Grand Hotel ("Marriott"), in which the Baldwin Circuit Court denied his claim for workers' compensation benefits. We affirm.
Alamo filed a complaint in the Mobile Circuit Court on February 3, 2005, against Marriott and several fictitiously named defendants seeking workers' compensation benefits for several back injuries that Alamo alleged arose out of and in the course of his work at Marriott. On May 20, 2005, the Mobile Circuit Court transferred the case to the Baldwin Circuit Court ("the trial court"). Marriott answered on June 23, 2005. On April 10, 2006, Marriott filed a motion for a summary judgment. Though the case-action-summary sheet and other documents in the record on appeal do not indicate the trial court's disposition of that motion, documents filed by both parties at the trial-court level and on appeal indicate that the trial court denied Marriott's motion for a summary judgment on April 26, 2006.
On October 12, 2006, Alamo filed a "Motion to Bifurcate" in which he requested that the trial court hold a hearing solely on *599 the threshold issue of the compensability of his medical condition. In that motion, Alamo claimed that he could not visit a doctor to determine the extent of his disability unless the trial court first found that his injury was compensable. Marriott responded by encouraging the trial court to grant Alamo's motion to bifurcate, and on November 15, 2006, the trial court held an ore tenus hearing solely on the issue of the compensability Alamo's injuries.
Alamo was the only witness who testified at the November 15, 2006, hearing, but both parties submitted multiple exhibits, including some of Alamo's medical records and the deposition of Dr. William Patton, one of Alamo's treating physicians. At the hearing, Alamo testified that he suffered his first injury while working for Marriott ("the first Marriott injury") in February 2003 while he was moving some tables. According to Alamo, while he was carrying several folding tables, he turned his head to look at a coworker and heard a "pop" in his back and felt pain shortly afterwards. Alamo submitted as exhibits to the trial court Dr. Patton's treatment notes regarding the first Marriott injury. Those records revealed that on April 2, 2003, Dr. Patton diagnosed Alamo as having degenerative joint disease of his spinal cord at the "L3-L4" level and slightly decreased disk space between the "L5-S1" vertebrae. At a subsequent visit, Dr. Patton observed that Alamo had a bulging disk at the "L4-L5" level, and he recommended that Alamo be given an epidural block as treatment for the injury. Dr. Patton also recommended that Alamo not work until he received the epidural block. Alamo continued to receive treatment from Dr. Patton and he showed improvement. On July 11, 2003, Dr. Patton concluded that Alamo had reached maximum medical improvement ("MMI") and that Alamo would have to live with permanent work restrictions that included, among others, lifting no greater than 35 pounds. Dr. Patton concluded that Alamo had suffered a 4% impairment of the whole person as a result of the first Marriott injury.
Alamo testified that on May 29, 2004, after he had returned to work following the first Marriott injury, he injured his back again ("the second Marriott injury"). Alamo stated that he was shaking out a table cloth when he felt pain equivalent to the pain he had suffered after the first Alamo injury. On July 16, 2004, Dr. Patton concluded that Alamo had herniated disks at the L4-L5 level and at the L5-S1 level in his spine. At his October 27, 2005, deposition, Dr. Patton discussed the differences between two magnetic resonance imaging ("MRI") scans of Alamo's spine, one scan conducted on April 9, 2003, following the first Marriott injury, and another scan conducted on July 12, 2004, following the second Marriott injury. Dr. Patton stated that the results of the two MRIs were "very similar." Dr. Patton recommended that Alamo again be treated with an epidural block. Several months later, after Alamo was treated with an epidural block and went through physical therapy, Dr. Patton concluded that Alamo had again reached MMI. Based on Alamo's condition at that time, Dr. Patton placed Alamo's impairment rating at a 6% impairment of the whole person and restricted him to lifting no more than 25 pounds.
The evidence revealed that the Marriott injuries were not the first injuries that Alamo had suffered to the L3-L4, L4-L5, and L5-S1 areas of his back. In a deposition taken on September 13, 2005, Alamo testified that, before the Marriott injuries, he had not suffered any injuries to his back. However, in a letter dated September 19, 2005, from Alamo's attorney to Marriott, Alamo's attorney stated that Alamo had remembered suffering a "lower back strain" while working at a previous *600 job. At the November 15, 2006, hearing, Alamo admitted that, before the first Marriott injury, he had suffered a back injury on November 4, 1994, while working for a farm supply company. Marriott submitted medical records from several physicians who had treated Alamo for his November 4, 1994, injury. An MRI scan taken of Alamo's back on April 5, 1995, revealed that Alamo had a "slight protrusion of disc material at L4-5." Treatment notes from Dr. Eric Schiller, a pain-treatment specialist, revealed that, on April 6, 1995, Dr. Schiller administered an epidural block to the L4-L5 region of Alamo's spine. Dr. Schiller also administered epidural blocks to Alamo, on April 24, 1995, to the L4-L5 and the L5-S1 regions of Alamo's spine, and again on August 31, 1995, to the L3-L4, L4-L5, and L5-S1 regions of Alamo's spine. It appears from the medical records that Alamo reached MMI from his November 4, 1994, injury on March 6, 1997. On that day, Dr. Eugene Saiter, Alamo's primary treating physician at that time, noted that Dr. Schiller had discharged Alamo from further treatment and that Alamo was "doing well." Dr. Saiter noted that Alamo would need to perform a "life long maintenance program of abdominal strengthening exercises" to manage his injury. The record does not reveal whether Alamo was ever given an impairment rating based on his condition following the November 4, 1994, injury.
Alamo testified that after he saw Dr. Saiter on March 6, 1997, he had no back pain until the first Marriott injury in February 2003. Alamo also stated that the pain he felt from the Marriott injuries was different and more severe than the pain he had suffered after his November 4, 1994, injury.
At his October 27, 2005, deposition, Dr. Patton testified that, although he knew that Alamo had been treated for back pain before the Marriott injuries, he was not aware of the nature or extent of Alamo's November 4, 1994, injury. Joseph Stutz, counsel for Marriott, briefly summarized for Dr. Patton the history of Alamo's November 4, 1994, injury by stating the following:
"Let me represent briefly to you that from 1994 to 1997 that Mr. Alamo had been treated by ... a series of doctors... for an accident that occurred with a different employer back in November of 1994, and that at one point they had assigned him a 25-pound lifting restriction and had done an MRI which indicated a herniated disc at the L4-5 area."
Based on that description of the circumstances surrounding Alamo's November 4, 1994, injury, Dr. Patton stated that "if [Alamo] had a disc at the same level, you know, ... assuming [that] ... the MRI [following the Marriott injuries] was ... a repeat [of the pre-Marriott MRI]," then it was likely that the treatment following the Marriott injuries returned him to his pre-Marriott-injury status.
Later, Stutz asked Dr. Patton whether he could "say with any type of certainty whether [the] symptoms that [Alamo is] having now [are] related to any of the accidents he had either [in] February of 2003 or May of 2004 while he was employed at [Marriott]?" Dr. Patton responded: "I would say with a reasonable degree of medical certainty that it's possible that it's related to his [Marriott] work injur[ies]." Stutz then asked Dr. Patton whether it was possible that Alamo's symptoms were related to Alamo's November 4, 1994, injury. Dr. Patton responded that that was also possible.
Counsel for Alamo, Richard Browning, asked Dr. Patton whether, given the fact that Alamo claimed to have been symptom-free from March 6, 1997, until February 2003, Alamo's current symptoms were *601 more likely related to the Marriott injuries or the November 4, 1994, injury. Dr. Patton responded: "If he's been pain-free for, say, five years, then you would have to assume that  that it's kind of stabilized... over that long of a time and that if hes had a new event, whatever the injury or event is, that you would relate it to that event."
After the November 15, 2006, hearing, the trial court entered a judgment on December 27, 2006, finding that Alamo "did sustain on-the-job temporary aggravations of his well-documented preexisting back condition on February 15, 2003, and again on May 29, 2004, and that [Marriott] was responsible under the Workers' Compensation Act to pay certain compensation and other benefits to [Alamo]." However, the trial court also found that "these temporary aggravations [had] fully resolved and all benefits and compensation due [Alamo] have been paid in full by [Marriott]." The trial court further stated:
"[Alamo] has failed to satisfy this Court ... that the February 15, 2003, and May 29, 2004, accidents with [Marriott] permanently caused, or contributed to, any permanent injury and/or disability. The Court finds that as [Alamo] has sustained no permanent injury or aggravation as a result of the subject accidents, he is entitled to no further benefits under the Alabama Workers' Compensation Act."
The trial court's finding seems to be based primarily on Dr. Patton's testimony that Alamo's current symptoms were "possibly" the result of either the Marriott injuries or his preexisting November 4, 1994, injury.
Alamo filed a motion to alter, amend, or vacate the trial court's judgment, which the trial court denied. Alamo timely appealed to this court. On appeal, Alamo argues that the trial court erred in finding that his Marriott injuries did not result in a compensable permanent disability.
This court has stated:
"When this court reviews a trial court's factual findings in a workers' compensation case, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2), Ala.Code 1975. Substantial evidence is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Further, this court reviews the facts `in the light most favorable to the findings of the trial court.' Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala. Civ.App.1994), overruled on other grounds, Ex parte Trinity Indus., Inc., 680 So.2d 262 (Ala.1996). This court has also concluded: `The [1992 Workers' Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court.' Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995). However, our review as to purely legal issues is without a presumption of correctness. See Holy Family Catholic School v. Boley, 847 So.2d 371, 374 (Ala.Civ.App.2002) (citing § 25-5-81(e)(1), Ala.Code 1975)."
Reeves Rubber, Inc. v. Wallace, 912 So.2d 274, 279 (Ala.Civ.App.2005).
As our supreme court has stated, "an employer is not the absolute insurer of an employee's health and should bear only the costs of compensating employees for accidents that arise out of and in the course of their employment." Ex parte Trinity Indus., Inc., 680 So.2d 262, 265 (Ala.1996) (footnote omitted).
"`[I]n Alabama the employment must be the source and cause of the accident. Our supreme court in Wooten *602 v. Roden, 260 Ala. [606,] 610, 71 So.2d [802,] 805 [(1954)], stated that in order to satisfy the "source and cause" requirement "the rational mind must be able to trace the resultant injury to a proximate cause set in motion by the employment and not otherwise...."'
"Slimfold Mfg. Co. [v. Martin], 417 So.2d [199,] 201-02 [(Ala.Civ.App. 1981)]. The court then stated that `[t]he but-for test is clearly not the test for causation under Alabama's [Workers'] Compensation Act. Instead, the burden is on the claimant to establish a definite causal connection between the work and the injury.' Id. at 202 (emphasis added)."
Wal-Mart Stores, Inc. v. Morgan, 830 So.2d 741, 745 (Ala.Civ.App.2002).
Alamo argues that the trial court erred by not giving greater weight to Dr. Patton's testimony that, because Alamo was symptom-free for approximately six years from March 6, 1997, until the first Marriott injury, his current symptoms and disability were likely related to the Marriott injuries. Alamo claims that Dr. Patton's testimony was "undisputed" and that it "clearly and unequivocally" indicated that Dr. Patton believed Alamo's current symptoms to be directly related to the Marriott injuries.
Dr. Patton's testimony did not, as Alamo claims, "clearly and unequivocally" support Alamo's position. In his deposition, Dr. Patton testified that Alamo's symptoms could be related to either the November 4, 1994, injury or the Marriott injuries. Dr. Patton also testified that, given the similar pattern of diagnosis and treatment for the November 4, 1994, injury and the Marriott injuries, the treatment regimen following the Marriott injuries likely returned Alamo to the status he enjoyed before the first Marriott injury.
Further, the medical records relating to Alamo's November 4, 1994, injury indicate that Alamo was diagnosed with degenerative joint disease in his spine and a bulging L4-L5 disk, that he received multiple epidural blocks to the L3-L4, L4-L5, and L5-S1 regions of his spine, and that he was placed on a permanent 25-pound-limit lifting restriction and a "life long maintenance program of abdominal strengthening exercises." The records relating to the Marriott injuries reveal a strikingly similar pattern. Without the benefit of any knowledge of Alamo's prior injury, Dr. Patton diagnosed Alamo with degenerative joint disease of the spine and herniated L4-L5 and L5-S1 disks. Dr. Patton also ordered epidural blocks to the L3-L4, L4-L5, and L5-S1 regions of Alamo's spine, the same areas where the physicians treating Alamo for his November 4, 1994, injury had ordered epidural blocks. Also, at his last visit with Alamo, Dr. Patton placed Alamo on a permanent work restriction of lifting no greater than 25 pounds, among other minor restrictions. Based on those records, the evidence supports the trial court's conclusion that the Marriott injuries aggravated but did not worsen Alamo's preexisting condition resulting from his November 4, 1994, injury.
Therefore, based on Dr. Patton's testimony and on the similarities between the medical records preceding the Marriott injuries and the records that followed the Marriott injuries, the trial court could have concluded that Alamo failed to meet his burden of showing a definite causal connection between his work for Marriott and his present disability. The medical records and portions of Dr. Patton's testimony constitute substantial evidence that supports the trial court's conclusion that Alamo suffered only a temporary aggravation of his November 4, 1994, injury and that the medical treatment Alamo received remedied that temporary aggravation. Accordingly *603 the judgment of the trial court is affirmed.
AFFIRMED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs specially, with writing.
MOORE, Judge, concurring specially.
I concur in the main opinion affirming the judgment of the trial court denying permanent-disability benefits to Efrain Alamo ("the employee") based on the trial court's determination that the employee failed to prove that his 2003 and 2004 work-related accidents medically caused his permanent back injury. I write specially to address the employee's contention that the trial court erroneously applied the law regarding preexisting conditions in denying the employee's claim.
Preexisting conditions impact two separate workers' compensation issues: medical causation and the apportionment of compensation.
As for medical causation, Alabama has adopted the "contributing cause" standard by which the employment need not be the sole, or even the dominant, cause of the employee's injury so long as it is one of multiple factors acting in concert to bring about the injury. See Ex parte Valdez, 636 So.2d 401, 405 (Ala.1994). Pursuant to the "contributing cause" standard, if a work-related accident aggravates or accelerates an employee's preexisting condition, that aggravation or acceleration of the injury and all of its disabling effects are considered to be caused by the accident even if the accident would have caused no injury or disability to a normal person. See Taylor v. Mobile Pulley & Mach. Works, 714 So.2d 300, 302 (Ala.Civ.App. 1997).
For the purposes of medical causation, the presence of a preexisting condition does not disqualify an employee from receiving benefits so long as the employee proves that the work-related accident aggravated or accelerated the condition to cause the injury and disability claimed. Godbold v. Saulsberry, 671 So.2d 80, 81 (Ala.Civ.App.1994) (citing Ex parte Lewis, 469 So.2d 599 (Ala.1985)). On the other hand, "if the evidence establishes that a pre-existing injury or condition is the root of [the] disability, and not [the] work-related accident, then the trial court is justified in determining that the employee suffered no compensable disability." Dempsey v. White Consol. Indus., Inc., 620 So.2d 38, 40 (Ala.Civ.App.1993) (citing Wilson v. Berry Indus. Co., 451 So.2d 339 (Ala.Civ. App.1984)).
Accordingly, if the work-related accident merely temporarily aggravates a preexisting condition, not contributing at all to the preexisting condition after a period of time, the employer is liable under the workers' compensation laws only for treatment of the temporary aggravation and its temporary disabling effects. See, e.g., Howe v. Choctaw Emergency Mgmt. Servs., 725 So.2d 978, 979 (Ala.Civ.App. 1998) (finding that employee did not sustain permanent partial disability as result of back injury was supported by substantial evidence; doctor testified that back injury caused lumbar strain from which employee recovered one year later and that remaining back pain was due to preexisting condition); and Cobb v. Coyne Cylinder Co., 719 So.2d 219, 222 (Ala.Civ. App.1998) (affirming judgment denying permanent-disability benefits to employee based on evidence indicating that employee only temporarily injured his shoulder and that any permanent problems resulted from preexisting condition). The employer is not liable under the workers' compensation laws for any continuing injury or *604 disability caused solely by the preexisting condition and its natural progression. See Sexton v. Pendley, 474 So.2d 1148, 1150 (Ala.Civ.App.1985) (affirming award of temporary-total-disability benefits, but denying permanent-disability benefits based on finding that work-related accident caused temporary injury but that permanent back problems related solely to employee's obesity). The employer is liable for any permanent injury and disability resulting from a preexisting condition only if the work-related accident permanently contributes to that condition and disability. See DeHart v. Ideal Basic Indus., Inc., 527 So.2d 136, 138-39 (Ala.Civ.App.1988) (trial court did not err in awarding only 15% permanent-partial-disability benefits based on expert medical evidence that preexisting degenerative disk disease, not work-related back strain, caused majority of employee's permanent disability).
In the context of apportionment of compensation, Ala.Code 1975, § 25-5-58, provides:
"If the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity, the employer shall be liable only for the disability that would have resulted from the accident had the earlier injury or infirmity not existed."
In Ingalls Shipbuilding Corp. v. Cahela, 251 Ala. 163, 36 So.2d 513 (1948) (superseded on other grounds by statute), the supreme court construed the term "disability" as used in Title 26, § 279, Ala.Code 1940, the predecessor to § 25-5-57, and the term "infirmity," as used in Title 26, § 288, Ala.Code 1940, the predecessor to § 25-5-58, to "refer to a condition which affects [the employee's] ability to work as a normal man at the time of and prior to the accident...." 251 Ala. at 173, 36 So.2d at 521. Based on Cahela, Alabama has adopted a legal fiction that an employee does not have a preexisting injury or infirmity for the purposes of apportionment when the employee is able to fully perform his or her duties in a normal manner before the subject injury. See Taylor v. Mobile Pulley & Mach. Works, 714 So.2d at 302.[1] However, if the preexisting condition affects the employee's ability to perform the duties of the job as a normal worker, see, e.g., Druid City Hosp. Reg'l Med. Ctr. v. Junkins, 495 So.2d 69, 71 (Ala.Civ.App.1986), or the employee has not fully recovered from the prior injury or disability, see General Motors Corp. v. Jackson, 823 So.2d 695, 699 (Ala.Civ.App. 2001), the employee's award would be reduced under the apportionment statute. See Champion Int'l Corp. v. Williams, 686 So.2d 1204, 1207 (Ala.Civ.App.1996).
Over the years, when discussing the effect of preexisting conditions on workers' compensation cases, the appellate courts of this state have intermingled the law relating to medical causation and the law relating to apportionment of compensation. As a result, many cases indicate that no preexisting condition is present for medical-causation purposes if the employee is working normally on the date of the accident. See Terry A. Moore, Alabama Workers' Compensation § 7:6, n. 54 (West 1998). However, this legal fiction does not logically apply to cases in which an employee depends on proof of the aggravation *605 or acceleration of a preexisting condition in order to satisfy the contributing-cause standard. See McCutcheon v. Champion Int'l Corp., 623 So.2d 742, 744 (Ala.Civ. App.1993) (in affirming denial of benefits for alleged work-related back strain, court noted that had employee claimed aggravation of earlier nonoccupational back injuries, her claim may have been compensable). Quite simply, a preexisting condition cannot be aggravated or accelerated if it does not exist.
By importing the apportionment legal fiction into medical-causation discussions, some appellate opinions have fostered the misimpression that if an employee is working normally before and at the time of the accident, and hence has no preexisting condition, then, as a matter of law, any subsequent injury or disability must be considered to be caused by the accident. See, e.g., Tarver v. Diamond Rubber Products Co., 664 So.2d 207, 210 (Ala.Civ.App.1994); see also T. Moore, supra at § 7:24, nn. 44-49. However, based on my review of all of the pertinent cases, I believe Alabama actually has not adopted any rule of law to that effect. Rather, under Alabama law, the fact that an employee was asymptomatic and able to work normally before the accident, but became symptomatic and unable to work afterwards, is merely circumstantial evidence that will support a finding that the work-related accident caused the symptoms and disability. See Birmingham Post Co. v. McGinnis, 256 Ala. 473, 476, 55 So.2d 507, 509 (1951). Although a trial court may infer medical causation from the appearance of symptoms and the onset of disability following a work-related accident, it is not compelled to make such a finding, especially if that inference is undermined by other factors or evidence. See, e.g., Hammons v. Roses Stores, Inc., 547 So.2d 883 (Ala.Civ.App. 1989) (when expert medical evidence indicated employee's back condition was degenerative in nature and had not been changed by work-related accident, trial court properly denied benefits); Mobile County v. Benson, 521 So.2d 992, 995-96 (Ala.Civ.App.1988) (reversing award of benefits when undisputed expert medical testimony established that employee's work-related fall did not have any effect on his preexisting back condition); and Proctor v. R.R. Dawson Bridge Co., 757 So.2d 446 (Ala.Civ.App.1999) (evidence indicating that employee misrepresented preexisting condition and circumstances of alleged work-related heat exhaustion supported finding that subsequent disability was related solely to preexisting condition). In every case, even in cases where the employee is working normally before the accident, the issue of medical causation is a question of fact, not of law. See Goodyear Tire & Rubber Co. v. Snell, 821 So.2d 992, 997 (Ala.Civ.App.2001).
In this case, the employee basically asserts that because he was working normally at the time of his Marriott injuries, the trial court was required to find that any subsequent back problem and disability arising therefrom must be related to his Marriott injuries and therefore must be compensable. However, the trial court was not bound by those facts; rather, it was required to consider the totality of the evidence relating to medical causation. See Ex parte USX Corp., 881 So.2d 437, 442 (Ala.2003). As the main opinion concludes, the record contains other, substantial evidence  including the expert medical testimony of the employee's treating physician  supporting the trial court's determinations that the Marriott injuries merely temporarily "flared" the employee's preexisting back condition, but that he returned to his baseline condition, and that the Marriott injuries did not contribute to the employee's permanent back injury and associated disability. Therefore, I concur in the *606 main opinion affirming the judgment denying permanent-disability benefits.
NOTES
[1] Section 25-5-57(a)(4)e., Ala.Code 1975, contains language similar to § 25-5-58, but more specifically related to preexisting disabilities and injuries sustained in prior employment. Section 25-5-57(a)(4)e. has been construed identically to § 25-5-58 so that if the employee is working normally at the time of the second accident, the law presumes the employee had no preexisting disability or injury. See Ex parte Bratton, 678 So.2d 1079, 1083 (Ala. 1996).