PITTMAN, Judge.
McAbee Construction, Inc. (“McAbee”), appeals from a judgment awarding Elvin L. Allday, Jr., permanent-total-disability benefits pursuant to the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975 (“the Act”). We affirm in part, reverse in part, and remand.

Facts and Procedural History

Allday had been employed as a boilermaker since 1986, working at union pay scale for different employers on various job sites. Allday explained that a boilermaker’s job requires heavy lifting and hard labor and encompasses the skills of a pipefitter, a millwright, and a welder in repairing and installing equipment used on industrial heating systems. Allday had routinely chosen to work only 40 weeks per year, electing to spend time with his family and pursue his hobbies of hunting, fishing, and working on automobiles during the other 12 weeks of the year. During his career as a boilermaker, Allday had sustained several work-related injuries, including a low-back injury in 1999 and injuries to his shoulders in 1992 and 1998 that had necessitated four surgical procedures.
Allday worked for McAbee for five days — Monday, June 5 through Friday, June 9, 2006 — during a temporary shutdown of the Georgia-Pacific pulp and paper mill in Pennington. On the afternoon of Wednesday, June 7, 2006, he was injured during the installation of an expansion joint in the ductwork to a boiler in the plant. According to Allday, the expansion joint weighed between 800 and 1,000 pounds. Allday was on top of the duct-work, approximately 15 feet off the ground, trying to maneuver the expansion joint into place as workers below him were using two-by-fours to push the expansion joint upward. Suddenly, the joint began to slip down toward the workers on the ground. As Allday was attempting to hold the joint and pull it toward him, he felt a jolt and experienced pain in his neck, shoulders, and back. Allday finished his shift on Wednesday, June 7, and reported the accident to safety coordinator Joel Kelly the following morning, Thursday, June 8. The employer’s first report of injury reflects that Allday had reported only arm *971 and shoulder injuries and not a back injury. Allday declined medical treatment and continued to work on Thursday and Friday. On Monday, June 12, Allday telephoned McAbee site superintendent Mickey Jones and reported that, while he had been driving home to Citronelle after the job had ended on Friday, the pain in his back had increased and had become even more severe over the weekend. Allday asked Jones to schedule an appointment for him with a physician.
On June 20, 2006, Allday consulted Dr. André J. Fontana, a Mobile orthopedic surgeon who had treated Allday for other on-the-job injuries and had performed all four of Allday’s previous shoulder surgeries. Dr. Fontana’s office notes for that day indicate that Allday had complained of neck pain, bilateral shoulder pain, and low-back pain as a consequence of a work-related accident on June 7. Dr. Fontana ordered a magnetic resonance image (“MRI”) of Allday’s lumbar spine and nerve-conduction studies. The MRI revealed no acute injury and no change from a previous MRI that had been performed in December 1999. Like the 1999 MRI, the 2006 MRI indicated degenerative changes in Allday’s lumbar spine, including bulging disks at L4-5 and L5-S1 and bilateral stenosis at L5-S1, with possible narrowing of the nerve-root space. The nerve-conduction studies revealed that All-day was suffering from previously undiagnosed carpal-tunnel syndrome.
Dr. Fontana treated Allday for a year. He administered epidural blocks and cortisone shots in Allday’s lumbar spine, prescribed narcotic pain relievers, sent Allday to physical therapy, and referred him to a psychiatrist for treatment of depression. Nothing, however, provided Allday with any lasting relief from debilitating pain that, Allday said, was preventing him from working and carrying on his normal daily activities.
Dr. Fontana referred Allday to Dr. Tim Revels for a discussion of surgical options. After consulting with Dr. Revels, Allday was unsure as to whether he should undergo lumbar surgery, and he returned to Dr. Fontana, requesting to be referred to Dr. James L. West III, an orthopedic surgeon who specializes in spinal surgery, for a second opinion.
When Dr. West first saw Allday in June 2007, Allday complained of severe low-back pain radiating into his buttocks and both legs. Dr. West stated that, after he had outlined the risks of lumbar-fusion surgery, Allday had decided to consider the matter further and Dr. West had referred Allday to Dr. Chris Nicols, a pain-management specialist. The pain-management protocol proved to be unsuccessful, and Allday returned to Dr. West on August 14, 2007, stating that he had decided to have the surgery. On August 27, 2007, Dr. West performed a two-level lumbar fusion at L4-5 and L5-S1 and a decompressive laminectomy at L4-5 and L5-S1, with for-aminotomies of the L4, L5, and SI nerve roots. Dr. West determined that Allday had reached maximum medical improvement (“MMI”) on March 14, 2008, and that he could return to work within the guidelines of a functional-capacity evaluation (“FCE”) that had been conducted on February 18, 2008.
Following the accident, McAbee paid Allday’s medical expenses and temporary-total-disability benefits from June 20, 2006, until March 31, 2008. On February 13, 2008, Alday filed a complaint seeking permanent-total-disability benefits for the June 7, 2006, injury to his lower back. McAbee answered the complaint, asserting, among other things, that Alday had failed to notify it of a back injury and denying that Alday was permanently and totally disabled. The case was tried on October 1, 2010.
*972 The trial court admitted documentary-evidence, including the deposition testimony and medical records of Dr. Fontana and Dr. West, the medical records of IWR Therapy Systems pertaining to Allday’s FCE, and the medical records pertaining to Allday’s treatment by psychologist Michael Rosenbaum, Ph.D.
Allday testified that his pain was worse after the lumbar surgery than it had been before the surgery; he suffers from pain that averages an intensity of 7 on a 10-point scale. He also testified that his cognitive abilities are impaired by the medications he takes on a daily basis: acetaminophen/hydrocodone (a narcotic pain reliever); carisoprodol (a muscle relaxer); pregabalin (a neuropathic pain reliever for damaged nerves); escitalopram oxalate (an antidepressant); and zolpidem (a sedative/sleep aid).
Allday stated that, because his wife is a nurse who works the night shift, he is responsible for getting his six-year-old son to school in the morning. After shouldering that responsibility, Allday said, he is extremely limited in what else he can do each day. He uses a riding lawnmower to cut the grass, but, he said, that task requires two days to complete because he must take frequent breaks. He sleeps only three or four hours at a time, and, in his waking hours, he must change positions often to relieve the pressure on his back.
Kristen Baker, a former employee of IWR Therapy Systems, reached the following conclusions after conducting All-day’s FCE:
“[Allday] demonstrated ability to lift in the sedentary physical demand level of ten pounds at knee to shoulder. However, secondary to symptom magnification characteristics, self-limiting behavior, and [nine] demonstrated inconsistencies, [Allday’s] actual capabilities may be questionable, and recommendations are difficult to make.... Although efforts did not appear maximal or consistent, these are the levels [Allday] was willing to perform.”[1]
In August 2008, Allday consulted Dr. Michael Rosenbaum, a psychologist, for depression. The trial court admitted Dr. Rosenbaum’s treatment records in evidence. In an office note dated September 18, 2008, Dr. Rosenbaum stated:
“[Allday] mentioned that ... the increase in his level of pain ... has had a limiting effect on his activities. I enabled [Allday] to recognize that [his] depression and anxiety make[ ] it more difficult for him to tolerate the pain, contributing to his perception of the pain as being at a greater level.”
Patricia Russo, Allday’s vocational expert, testified that, based upon her two-hour interview with Allday and a review of Allday’s medical records, the deposition testimony of Allday’s physicians, and the FCE report, she concluded that Allday was 100 percent vocationally disabled as a result of his prior shoulder problems, carpal-tunnel syndrome, and his low-back pain.
In deposition testimony, Dr. Fontana stated that Allday’s 1999 back injury had resolved within three or four months and that Allday had continued to work without further back symptoms until the work-related accident on June 7, 2006. Dr. Fon-tana opined that the back pain that Allday was currently experiencing could have been brought on even without a traumatic injury, and, he said, if Allday had reported back pain to McAbee after the accident, he could state, to a reasonable degree of med *973 ical certainty, that there was a causative relation between the pain and the accident. When informed that Allday had reported back pain on the Monday following the accident, Dr. Fontana stated that it was “not unusual” to report a back injury after several days of increasingly severe back pain.
In deposition testimony, Dr. West acknowledged that the surgery had not helped Allday. He opined that Allday’s work-related accident on June 7, 2006, had either exacerbated or caused the back problems from which Allday was currently suffering.
On August 30, 2011, the trial court entered a judgment determining that Allday was permanently and totally disabled as a result of a June 7, 2006, injury to his lumbar spine and awarding him benefits under the Act in accordance with that determination. McAbee’s postjudgment motion was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P., after which it filed a timely appeal to this court.
Our review is governed by the Act, which states, in pertinent part: “In reviewing the standard of proof ... and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.” Ala.Code 1975, § 25-5 — 81(e)(1). See also Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996). “In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” Ala.Code 1975, § 25 — 5—81 (e)(2). Substantial evidence is “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., 680 So.2d at 269 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), and citing § 12-21-12(d), Ala.Code 1975).
On appeal, McAbee presents seven issues for our review: (1) whether Allday provided notice of a back injury; (2) whether the trial court’s finding — that the June 7, 2006, accident was the medical cause of Allday’s back injury — is supported by substantial evidence; (3) whether the trial court’s permanent-total-disability determination is supported by substantial evidence; (4) whether the reference in the trial court’s judgment to Allday’s depression indicates that the trial court determined that the depression was the proximate result of a work-related injury; (5) whether the trial court properly calculated Allday’s average weekly earnings; (6) whether the trial court erred in awarding benefits for the remainder of Allday’s life; and (7) whether the trial court erred in calculating benefits and an attorney fee.

Notice

McAbee contends that Allday’s notice of the work-related accident was inadequate because Allday did not specify that he had suffered a back injury. Section 25-5-78, Ala.Code 1975, provides, in pertinent part, that “an injured employee or the employee’s representative, within five days after the occurrence of an accident, shall give or cause to be given to the employer written notice of the accident.” (Emphasis added.)
“The claimant need not notify the employer of the exact nature of the injury that flows from the accident.[62] And the employer need not acquire actual knowledge of the nature or extent of the injury in order to meet the statutory requirement.
*974 2 Terry A. Moore, Alabama Workers’ Compensation § 22:12 at 452-53 (1998). The trial court correctly concluded that Allday had provided McAbee with adequate notice of the accident.

Medical Causation

McAbee argues that Allday’s back problems predated his five-day period of employment with McAbee and had no causal relation to the work-related accident that occurred on June 7, 2006. McA-bee points out that the 2006 MRI of All-day’s lumbar spine was unchanged from a 1999 MRI of his lumbar spine, indicating, it says, that degenerative disk disease and a 1999 back injury were the medical causes of Allday’s current back problems.
“It is not necessary that the employment-related injury be the sole cause, or the dominant cause, of the [disability], so long as it was a contributing cause. See Ex parte Valdez, 636 So.2d 401 (Ala.1994). If the employee suffers from a latent preexisting condition that inevitably will produce injury or death, but the employment acts on the preexisting condition to hasten the appearance of symptoms or accelerate its injurious consequences, the employment will be considered the medical cause of the resulting injury. See, e.g., Taylor v. Mobile Pulley & Mach. Works, 714 So.2d 300 (Ala.Civ.App.1997).”
Associated Grocers of the South, Inc. v. Goodwin, 965 So.2d 1102, 1110 (Ala.Civ.App.2007).
Dr. Fontana, who had treated All-day for many years for other orthopedic problems, stated that, given Allday’s preexisting degenerative disk disease and 1999 back injury, Allday’s current back problems could have arisen even in the absence of any traumatic event. Nevertheless, because Allday’s 1999 back injury had resolved in a few months and Allday had continued to work at a physically demanding job for seven years without complaining of back pain, Dr. Fontana attributed the medical cause of Allday’s current back pain to the new injury on June 7, 2006. “A trial court may infer medical causation from circumstantial evidence indicating that, before the accident, the worker was working normally with no disabling symptoms but that, immediately af-terwards, those symptoms appeared and have persisted ever since. See Boise Cascade Corp. v. Jackson, 997 So.2d 1042, 1047 (Ala.Civ.App.2008) (citing Alamo v. PCH Hotels & Resorts, Inc., 987 So.2d 598, 603 (Ala.Civ.App.2007) (Moore, J., concurring specially)).” Waters Bros. Contractors, Inc. v. Wimberley, 20 So.3d 125, 134 (Ala.Civ.App.2009). See also Equity Group-Alabama Div. v. Harris, 55 So.3d 299, 311 (Ala.Civ.App.2010).
Dr. West also opined that Allday’s back pain had been caused or exacerbated by the work-related accident on June 7, 2006. The expert testimony relating to medical causation in this case was uncontradicted. The trial court’s medical-causation finding was supported by substantial evidence.

Permanent Total Disability

“Permanent total disability” is defined as “any physical injury ... resulting from an accident, which injury ... permanently and totally incapacitates the employee from working at and being retrained for gainful employment.” Ala. Code 1975, § 25-5-57(a)(4)d. “Total disability does not mean absolute helplessness; rather, it means that the employee is not able to perform his or her trade and is unable to obtain other reasonably gainful employment.” Dolgencorp, Inc. v. Hudson, 924 So.2d 727, 734 (Ala.Civ.App.2005). “ ‘[G]ainful employment means employment similar in remuneration to that earned prior to the injury. Implicit in this is that the gainful employment sought to be restored must be “suitable.” By “suitable” we mean employment which is com *975 patible with the employee’s pre-injury occupation, age, education, and aptitude.’ ” Trans Mart, Inc. v. Brewer, 630 So.2d 469, 471 (Ala.Civ.App.1993) (quoting Ex parte Beaver Valley Corp., 477 So.2d 408, 412 (Ala.1985)).
Allday was 51 years old at the time of trial. The record contains no evidence of Allday’s educational background, but it demonstrates that he had an aptitude for, and enjoyed, the heavy labor in which he had been engaged for 20 years. Allday returned to work after previous shoulder and back injuries in 1992, 1998, and 1999, and he testified that he had wanted to return to work after the 2006 back injury. At trial, he expressed regret that, after the accident, he had lost 25 pounds — mostly muscle mass, he said — and could no longer provide for his family or pursue the active hobbies he had formerly enjoyed. Allday’s doctors expressed no doubt that he was suffering from unremitting pain and that the number and amount of medications he was taking affected his mental acuity. McAbee did not present an expert to refute Patricia Russo’s assessment that All-day was 100 percent vocationally disabled. The trial court’s determination that Allday is permanently and totally disabled is supported by substantial evidence.

Allday’s Depression

In the “Findings upon Disputed Facts” section of its judgment, the trial court stated:
“Allday introduced the records of Michael Rosenbaum, Ph.D., a psychologist who has treated Allday for depression. Dr. Rosenbaum’s records reflect that ... the depression from which Allday suffers contributes to symptom magnification, which explains the symptom magnification identified during Mr. All-day’s functional capacities evaluation.”
McAbee suggests that the foregoing finding constitutes an implicit determination that Allday’s depression was proximately caused by a physical injury he suffered during his employment with McAbee, but, it says, Allday’s complaint did not allege a psychological injury and Allday presented no evidence indicating that a work-related physical injury had proximately caused the psychological injury from which Allday is suffering.
We do not interpret the trial court’s finding as a determination regarding the came of Allday’s depression. Instead, we think the finding reflects the trial court’s choice to accept Dr. Rosenbaum’s explanation for the symptom-magnification behavior that Allday exhibited during the FCE — i.e., that depression can actually cause or contribute to involuntary symptom magnification — instead of the inference that could have been drawn from Kristen Baker’s testimony — i.e., that All-day was purposely “faking bad” for secondary gain.

Computation of Allday’s Average Weekly Earnings

Section 25-5-57(b), Ala.Code 1975, sets out three methods for computing an employee’s average weekly earnings. Subsection (b) first provides:
“Compensation under this section shall be computed on the basis of the average weekly earnings. Average weekly earnings shall be based on the wages, as defined in Section 25-5-1(6) of the injured employee in the employment in which he or she was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury divided by 52, but if the injured employee lost more than seven consecutive calendar days during the period, although not in the same week, then the earnings for the remainder of the period, although not in the same week, then the earnings for the remainder of the 52 weeks shall be divided by *976 the number of weeks remaining after the time so lost has been deducted.”
The trial court decided that, because All-day had worked fewer than 52 weeks for McAbee before his injury, the first method was clearly inequitable.
The second method for establishing an employee’s average weekly earnings is stated as follows:
“Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, provided results just and fair to both parties will thereby be obtained.”
The trial court concluded that the second method was also inequitable because All-day had worked only five days for McA-bee.
Subsection (b) provides a third method for calculating average weekly earnings:
“Where by reason of the shortness of the time during which the employee has been in the employment of his or her employer or the casual nature or terms of the employment it is impracticable to compute the average weekly earnings as above defined, regard shall be had to the average weekly amount which during the 52 weeks prior to the injury was being earned by a person in the same grade, employed at the same work by the same employer, and if there is no person so employed, by a person in the same grade employed in the same class of employment in the same district. Whatever allowances of any character made to an employee in lieu of wages are specified as part of the wage contract shall be deemed a part of his or her earnings.”
Allday established that he had earned $1,401.40 for 50 hours’ work for McAbee. He had been paid $25.48 per hour for the first 40 hours he worked, with straight-time pay amounting to $1,019.20. He had been paid $38.22 per hour for the 10 overtime hours he worked, with time-and-a-half pay amounting to $382.20. Allday’s hourly rate was set by the union and was the same hourly rate for all jobs he had held during the year, irrespective of the employer for which he worked. Allday testified that, during the year, he had earned substantial overtime pay and that he had taken substantial time off between jobs.
McAbee introduced Exhibit 5, which showed the earnings of a McAbee employee who, McAbee claimed, was similarly situated to Allday. McAbee’s evidence demonstrated that the employee, a boilermaker, had earned $876 for 40 hours’ work, or $21.90 per hour. Allday objected on the ground that his own wages included additional pay for his ability to weld, whereas, he said, nonwelding boilermakers earn less pay, and there was no showing that McAbee’s employee was a welding boilermaker. When questioned by the trial court, McAbee was unable to state whether the worker whose wages were shown on Exhibit 5 was a welding or a nonwelding boilermaker. The trial court admitted McAbee’s Exhibit 5, stating: “I’ll just have to figure it out.”
The trial court concluded that it was authorized to deviate from the computation methods set out in § 25-5-77(b) and to use its discretion in determining Allday’s average weekly earnings. The trial court explained its reasoning as follows:
“Pursuant to case law and due to the unique circumstances of this case and Allday’s short-term employment with McAbee, this court is compelled to use its discretion in determining Allday’s average weekly wage. Taking into consideration Allday’s testimony concerning his hourly rate, and the fact that Allday worked considerable overtime, but also *977 did not regularly work 52 weeks during the year, the court finds that Allday’s average weekly wage on June 7, 2006, was $1,078. The court finds that Allday was making an average gross weekly wage of $1,401.40 ..but Allday was only working an average of 40 weeks a year, which is $56,056 per year divided by 52, which results in an average weekly wage of $1,078 over a 52-week period.”
In G.A. West & Co. v. McGhee, 58 So.3d 167 (Ala.Civ.App.2010), a factually analogous case, the employee was injured on his second day of work with the employer. This court determined that the trial court had acted within the limits of its discretion in deviating from the statutory methods for calculating the employee’s average weekly earnings. We noted that, “although a trial court must consider evidence of the average weekly earnings of a similarly situated employee, that evidence is not conclusive.” 58 So.3d at 173. This court ultimately reversed the trial court’s calculation of the employee’s average weekly earnings in McGhee because, we held, the trial court’s determination “appear[ed] to be an amount closer to [the employee’s] maximum possible weekly earnings than his actual average weekly earnings.” Id.
“In the end, when it is impracticable to apply the formulas for determining average weekly wage for employees working less than 52 weeks, efforts should be aimed at finding the figure that most accurately reflects the employee’s earning capacity. The statute leaves the method used to achieve the most equitable result to the sound judgment and judicial discretion of the trial court. In exercising this discretion, the court should keep in mind that the result should be fair to the employer, as well as the employee.”
1 Moore, Alabama Workers’ Compensation § 15:10 at 666-67 (footnote omitted).
In the present case, the trial court inquired whether McAbee’s employee was a welder and questioned whether comparing that employee to Allday was like “comparing oranges to oranges.” When McAbee could not give a definitive answer to the trial court’s question, the court, nevertheless, admitted McAbee’s evidence and ultimately made an implicit determination that McAbee’s employee was not similarly situated to Allday.
Because the evidence indicated that, during a normal year, Allday worked “considerable overtime,” the trial court included in the calculation of Allday’s average weekly earnings both Allday’s straight-time and overtime earnings for the 5-day period in which Allday was employed by McAbee. The evidence, however, also indicated that, during a normal year, Allday usually worked only 40 weeks rather than 52. The trial court accounted for that fact by multiplying Allday’s gross weekly wage by 40 weeks and then dividing the product by 52 weeks. We conclude that the trial acted within the limits of its discretion to determine a fair calculation of Allday’s average weekly earnings.

Lifetime Benefits

Allday concedes that the trial court erred in ordering McAbee to pay him permanent-total-disability benefits “for the remainder of his life.” Section 25-5-57(a)(4)a. provides that compensation for a permanent total disability is to be paid “during the permanent total disability.” A judgment awarding permanent-total-disability benefits to be paid “for the remainder of [the claimant’s] life” is an incorrect application of the statute. We, therefore, reverse the trial court’s judgment in part and remand the cause with instructions “for the trial court to correct that aspect of its judgment relating to the *978 period during which benefits are to be paid for permanent total disability.” Bostrom Seating, Inc. v. Adderhold, 852 So.2d 784, 800-01 (Ala.Civ.App.2002).

Benefit and Attorney-Fee Calculation

Section 25-5-57(a)(4)a. provides, in pertinent part:
“For permanent total disability, ... the employee shall receive 66% percent of the average weekly earnings received at the time of the injury, subject to a maximum and minimum weekly compensation as stated in Section 25-5-68.”
Multiplying Allday’s average weekly earnings at the time of the injury ($1,078) by 66% percent produces a compensation rate of $717.95. That compensation rate, however, is subject to the maximum weekly compensation limit set out in § 25-5-68. The maximum weekly compensation allowed on June 7, 2006, was $629.[2] Because Allday’s compensation rate exceeded the maximum weekly compensation limit of $629 in effect on June 7, 2006, the weekly compensation to which Allday is entitled under the Act is $629.
In Ex parte St. Regis Corp., 535 So.2d 160 (Ala.1988), our supreme court held that to award a lump-sum attorney fee in a permanent-total-disability case, the trial court must reduce the compensation award to present value according to the six percent discount rate set out in § 25-5-83, Ala.Code 1975.
“According to St. Regis, to properly award a lump sum of attorney’s fees in a permanent total disability [case], the trial court must first determine the life expectancy of the employee. The use of the standard mortality tables has been authorized for this purpose. Once the number of weeks of the employee’s life expectancy is determined, the trial court must discount the number of weeks by the six percent value. Then the number of weeks reduced to present value must be multiplied by the compensation rate to determine the amount of compensation awarded. The 15 percent statutory maximum is then applied to the compensation awarded to set a ceiling on the amount of lump-sum attorney’s fees that can be awarded.”
2 Moore, Alabama Workers’ Compensation § 29:14 at 787-88 (footnotes omitted).
Although the trial court made minor arithmetical errors in calculating the lump-sum attorney fee (errors that we have indicated and corrected in brackets in the quotation below), its method of computation follows the applicable statutes and the formula outlined in St. Regis. The judgment states:
“It is ordered, adjudged and decreed by the court as follows:
“1. McAbee is ordered to pay Allday back-due temporary-total-disability benefits and permanent-total-disability benefits at the rate of $629 per week (the statutory maximum at that time), from March 31, 2008 (the last day Allday received temporary-total-disability benefits), through the date of this order, which (as of August 22, 2011), totals 177 weeks, or $111,333.
“2. McAbee is ordered to back-pay Allday $8.50 per week ($629 minus $620.50), from June 7, 2006, until March 31, 2008 (93 weeks), for a total sum of $790.50.
“3. McAbee is ordered to pay Allday permanent-total-disability benefits.... Allday is presently 52 years old, born March 7, 1959, and, according to the *979 Commissioner’s Ordinary Standard Mortality Table, has a life expectancy of 26.46 years, or 1,376 weeks, which has a present value of 690.7597 weeks.[3] Thus, the present value of this award is [$434,487.85, not] $440,281.57 (690.7597 x $629). Therefore, McAbee is ordered to pay Allday $534.65 ($629 x 15% = $94.35; $629 minus $94.35 = $534.65) for [26.46 years, not] 27.34 years, at which point Allday’s payment shall go back to $629 per week.
“4. Pursuant to § [25-5-90, Ala.Code 1975,] of the Act, Allday’s attorney ... is awarded, and McAbee is ordered to pay in a lump sum, an attorney’s fee in the amount of [$81,991.71, not] $81,991.86, ... which is fifteen percent (15%) of all sums due. (15% of $111,333 = $16,699.95; 15% of $790.50 = $118.58; 15% of [$434,487.85 = $65,173.18, not] 15% of $434,488.85 = $65,173.33).”

Conclusion

The trial court’s judgment is reversed insofar as it (a) ordered McAbee to pay Allday permanent-total-disability benefits “for the remainder of his life” and (b) made minor arithmetical errors in calculating the lump-sum attorney-fee award. On remand, the trial court is instructed to correct the judgment as specified. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.

. During physical-therapy sessions under the supervision of Dr. Fontana in October and November 2006, the physical therapists had also noted symptom-magnification characteristics and inconsistent effort by Allday.

" 62 See ... Ragland Brick Co. v. Campbell, 409 So.2d 443 (Ala.Civ.App. 1982) (although evidence was in dispute over whether employee notified employer that he had injured his back in work-related fall, conflict was immaterial since notice of accident, not notice of injury, is all that is required)....”

. On the date this opinion was released, this information could be found at http://dir. alabama.gov//docs/guides/wc-weekfywage.pdf (as visited on April 19, 2013; a copy of the Web page containing this information is available in the case file of the clerk of the Alabama Court of Civil Appeals).

. On the date this opinion was released, the State Department of Labor provided a present-value calculator that could be found at http://dir.alabama.gov/wc/pvalue.aspx.