THOMPSON, Presiding Judge,
dissenting.
For the reasons discussed below, I believe that substantial evidence supports the trial court’s findings of fact in this case. I also believe that the trial court correctly applied the law to conclude that Lisa Hanvey was entitled to recover workers’ compensation benefits based on a permanent’ and total disability. Therefore, I respectfully dissent.
In the context of a workers’ compensation case,
“[o]ur review is restricted to a determination of. whether the trial court’s factual findings are supported by substantial evidence. Ala.Code 1975, § 25-5-81(e)(2). This statutorily mandated scope of review does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that substantial evidence supports a contrary factual *131 finding; rather, it permits this court to reverse the trial court’s judgment only if its factual finding' is not supported by substantial evidence. See Ex parte M & D Mech. Contractors; Inc., 725 So.2d 292 (Ala.1998).”
Landers v. Lowe’s Home Ctrs., Inc., 14 So.3d 144, 151 (Ala.Civ.App.2007). In reviewing legal issues in a workers’ compensation case, our review is without that presumption of correctness. § 25-5-82(e)(1), Ala.Code 1975.
In this case, the trial court found that Hanvey had suffered a work-related injury when she was subjected to the fumes from the chemicals being..used on the floors of the gymnasium, classrooms, and cafeteria at the campus of Madison Academy (“MA”), where Hanvey worked as a janitor. The exposure aggravated and worsened her preexisting myasthenia gravis (“MG”) to the point that it left her disabled. The trial court specifically found that “[t]his is a worsening of the underlying condition and not'merely a recurrence of symptoms inherent in the etiology of the preexisting condition.” Because she was able to perform her job before being exposed to the chemicals, the trial court concluded, Hanvey was entitled to compensation from MA.
Further, the trial court found that the “work-related exposure has rendered Ms. Hanvey unable to return to work at her job or perform her accustomed trade.” The trial court determined that, because she Was functionally illiterate, Hanvey would be prevented from training for a job that she would otherwise be able to perform despite her MG and that Hanvey was therefore excluded from the opportunity for gainful employment that would provide her with comparable compensation. Accordingly, the trial court concluded, Han-vey’s injury had rendered her permanently and totally disabléd, and it awarded benefits accordingly.
“ ‘If [substantial evidence supports the trial court’s findings of fact], then the judgment of the trial court must be affirmed. The appellate court is prohibited from reweighing the evidence, i.e., it is not to consider whether in its opinion the “substantial evidence” before the trial court might have caused the appellate court — if it had been the fact-finder — to find the facts to be different from what the trial court found them to be.’
“Ex parte Staggs, 825 So.2d 820, 822 (Ala.2001). We cannot substitute our judgment for that of the trial court. Ex parte Kmart Corp., 812 So.2d 1205 (Ala. 2001). We may not reverse a judgment simply because we would have decided the facts differently than the trial court. Id.”
Boise Cascade Corp. v. Jackson, 997 So.2d 1042, 1047 (Ala.Civ.App.2008).
Evidence before the trial court indicated that before June 2011, even though Han-vey was beginning to experience diplopia— a symptom of MG — she was able to perform her job as a janitor for MA. She had held that job for nearly five years before the floor-refurbishing projects at MA’s campus were performed in 2011, exposing Hanvey to chemical products that caused her to have difficulty breathing. Hanvey’s breathing problems increased to the point that she was hospitalized three times during the summer and early fall of 2011. She was treated by specialists who ultimately. diagnosed her with a- form of MG known as anti-MuSK MG.
In a letter to Hanvey dated November 23, 2011, one of her treating physicians, neurologist Dr. Amit Arora, wrote that Hanvey was “doing much better” on her prescribed medications. Dr. Arora recommended to Hanvey that she continue with *132 those medications and that she “stay away from a working environment that could exacerbate” her MG. Dr. Arora then wrote:
“I do believe that the exposure you have had to the chemicals more than likely caused respiratory difficulties that led to you being hospitalized in the intensive care and ultimately led to this diagnosis. “We would like to avoid further episodes in the future and we have, recommended that you avoid any of these exposures in the future as well.”
As stated in the main opinion, in a progress note dated January 13, 2012, Dr. Aro-ra wrote that he did not believe that Han-vey was capable of long-term employment because of her physical-condition. .
Dr. Anjaneyulu Alapati, a neurologist and expert in MG who treated Hanvey, testified that Hanvey’s MG was in a “long remission.” However, when asked by MA’s attorney whether Hanvey would be able-to be gainfully employed, Dr. Alapati said:
“Depending. If she did like.work with desk work or something like that, a lot of people go to work in the desk work, but anything labor work, anything physical activities, lifting weight, I’d advise them not to do that because it can get more fatigue.”
Dr. Alapati recommended that Hanvey just do “desk work” or sedentary work. He stated that, in his Opinion, “physical work and then infections in the body are the two things that typically-trigger weakness, myasthenia weakness.” Dr. Alapati also testified that a person involved in physical work “will not go back to completely normal. There will be some limitations.” He said that if Hanvey did something that caused heavy exertion, it could again cause temporary exacerbation of her symptoms. “We tell [MG patients] not to do those kind of exertions; the symptoms can come back.”
Dr. Cheryl Bazzle, Hanvey’s family physician, testified that Hanvey’s MG “was worsened by the exposure to. chemicals.” In her deposition, Dr. Bazzle was asked by MA’s attorney whether it would “be fair to say that a progression of [Hanvey’s] symptoms would not be medically inconsistent with the natural progression of the disease?” Dr. Bazzle stated that she would not say that was what happened to Han-vey. Dr. Bazzle explained that there was no doubt that Hanvey’s MG would progress, “usually on a slow[ ] ... progressive path. But what happened to her was it was — might have been continuing to progress, but when she got exposed to those floor chemicals, she did á crash and burn.”
I do not dispute that when Hanvey is on her medication and is not involved in physical labor, she does not display symptoms of MG. However, although her symptoms are dormant, evidence indicates that if she attempts to engage in the type of physical labor she could perform before her exposure to chemicals, those symptoms will return. In addition to Dr. Alapati’s comments set forth above, Dr. Bazzle testified that when Hanvey was exposed to chemicals, “which flared her up — her respiratory problems that she had anyway and then triggered the immune-mediated disease that she had going on. .And there you have it, this whole milieu of — of factors, exactly what you described, multiple factors that — that went in to a — a bad situation that she has not risen from,” Dr. Bazzle also said that Hanvey would not have suffered from the MG “at the time in the manner or, degree she did” had she not been exposed to.the chemical fumes while working for MA. Dr. Bazzle also said that she had not reviewed any peer-review literature that .would indicate that Hanvey would be better now if she had never worked for MA,
*133 John McKinney, the only vocational expert to testify in this case, evaluated Han-vey and found, that she was “functionally illiterate for all practical purposes” and that she was not a viable candidate for vocational retraining.
Prom the evidence, the trial court reasonably could have concluded that Hanvey had MG before the refurbishing of MA’s gym and classroom floors took places but that the condition did not affect" Hanvey’s job performance. The testimony of Dr. Arora, as well as the testimony of Dr. Alapati, indicates that if Hanvey were to engage in physical exertion, the MG symptoms would return. Because Hanvey is functionally illiterate, she is not a candidate for what Dr. Alapati called “desk work.” Therefore, even if this court might have reached a different conclusion from the same evidence, I believe the record contains substantial evidence to support the trial court’s findings that Hanvey experienced “a, worsening of the underlying condition and not merely a recurrence of symptoms inherent in the etiology of the preexisting condition” and that the worsening of the MG resulted in Hanvey’s inability to perform her job as she had been able to do before her exposure to the chemicals. In other words, the record contains substantial evidence indicating that Hanvey’s exposure to the chemicals used in the refurbishing project hastened or accelerated the progression of her MG symptoms to the point that she is no longer able to perform jobs for which she is qualified, regardless of whether the MG is in remission. Further, evidence indicates that Hanvey’s work-related “MG crisis” did not create a temporary situation from which Hanvey has recovered, or will ever recover, so as to be able to work again. The “MG crisis” Hanvey experienced accelerated the progression of the disease and left her worse off than she was before her exposure to the chemicals. It cut short her working life, i.e., her ability to earn. If not for the exposure to the chemicals, Hanvey might have been able to continue working normally for years-to comew
In applying the law to the trial court’s factual findings, it is well settled that an employee who suffers from- a preexisting condition
“is not precluded from recovering workers’ compensation benefits mérely because his or her condition existed before the Work-related incident giving rise to a workers’ compensation claim. See McAbee Constr. Co. v. Allday, 135 So.3d 968, 973 (Ala.Civ.App.2013). As we have explained:
“ ‘A worker who has a preexisting condition is not precluded from collecting workers’ compensation benefits if the employment aggravates, accelerates, or combines with, a latent disease or ..infirmity to produce; disability. Ex parte Lewis, 469 So.2d 599 (Ala.1985). A preexisting condition that did not affect the. [worker’s] work performance before the disabling injury is not considered, pursuant to the Act, to be a pre-existing condition. Associated Fdrest Materials v. Keller, 537 So.2d 957 (Ala.Civ.App.1988).
“Waters v. Alabama Farmers Coop., Inc., 681 So.2d 622, 623-24 (Ala.Civ.App.1996).”
SouthernCare, Inc. v. Cowart, 146 So.3d 1051, 1063 (Ala.Civ.App.2013).
The main opinion cites, a number of cases in support of the conclusion that MA is responsible only for the “temporary aggravation” of Hanvey’s MG. However, those cases are distinguishable from the instant case. For example,- in Alamo v. PCH Hotels & Resorts, Inc., 987 So.2d 598 (Ala.Civ.App.2007), Alamo had preexisting degenerative spinal-and disk problems that were aggravated by two accidents during *134 the course of his employment with PCH Hotels. 'The trial'court found that PCH Hotels was liable for certain workers’ compensation benefits based on the aggravation of Alamo’s back condition. However, the trial court also found that the “temporary aggravations [had] fully resolved,” adding that Alamo had failed to meet .his burden of proving that the accidents caused or contributed to any permanent injury. Therefore, the trial court did not award Alamo benefits for a permanent disability. Id. at 601.
On appeal, this court affirmed the trial court’s judgment, concluding that "substantial evidence supported the trial court’s conclusion that Alamo’s work-related injuries “aggravated but did not worsen [his] preexisting condition.” Id. -at 602 (emphasis added). This court stated that evidence in the record supported the • trial court’s determination that Alamo had failed to show a causal connection between the injuries resulting from his work-related accidents and the back problems for which he claimed disability benefits. Id.
This case is distinguishable from Alamo and other cases cited in the main opinion— specifically, Howe v. Choctaw Emergency Mgmt. Servs., 725 So.2d 978, 979 (Ala.Civ.App.1998), and Cobb v. Coyne Cylinder Co., 719 So.2d 219, 222 (Ala.Civ.App.1998) — in that, in each of those cases, the employee was injured at work, the injuries healed to the point where they 'were no longer preventing the employee from working, and any disability the employee was experiencing was attributable to some cause other-than the work-related injury. In this case, however, Dr. Bazzle and Dr. Alapatf each testified that the exposure to the chemicals had worsened or accelerated Hanvey’s MG, thus permanently contributing to Hanvey’s condition as opposed to temporarily aggravating it. -
I "find that Hanvey’s situation is more comparable to that of the employee in Goodyear Tire & Rubber Co. v. Cranford, 989 So.2d 1121 (Ala.Civ.App.2008). In that case, this court affirmed the trial court’s award of permanent and total disability benefits to Cranford, an employee who developed deep vein thrombosis (“DVT”), or a blood clot, as a result of arthroscopic surgery to repair a knee injury Cranford had sustained at work. As to the cause of the DVT, Cranford’s physician - testified:
“ ‘[Although I would say the events [the surgery and the development of DVT] are related because there’s no other apparent cause, it is generally accepted that, if one 'develops a deep vein thrombosis after arthroscopic surgery, one already had a high predisposition to developing a deep vein thrombosis.’ He further explained:
“ T think although [Cranford is] at a high predisposed risk for [DVT], any insult or injury no matter how minute, be it the injury itself and the surgery, ... that yes, in this case, I would link the two together, the injury, the surgery, and the result of the deep vein thrombosis because of his predisposition.’ ”
Id. at 1123.
In Cranford, Cranford was treated for DVT, which was being controlled with medication. Cranford’s treating physicians recommended that Cranford find work that would be easy for him to do. One of the physicians, Dr. Christopher Kelley, testified that he would recommend work in an office-type setting or ‘“the lightest type employment that there is.’ ” Id. at 1124. Dr. Kelley opined that Cran-ford was “ ‘considered a high risk for a recurrence’ of a blood clot and that ‘without the deep vein thrombosis [Cranford] would have been [released to work] without restrictions.’ ” Id.
*135 The evidence in Cranford indicated that, based on Cranford’s limited education, his lack of experience in the types of jobs Dr. Kelley recommended, and Cranford’s physical limitations, he had suffered a 96% loss of access to jobs and had an overall vocational-disability rating of 98% based on Dr. Kelley’s recommendations. When Cranford’s complaints of pain were considered, the vocational specialist testified, Cranford had a vocational-disability rating of 100%. Id. at 1125.
Goodyear argued that it was not responsible for payment of workers’ compensation benefits for Cranford’s disability resulting from his predisposition to DVT. In affirming the trial court’s determination that Cranford was permanently and totally disabled, this court relied on the rule that
“‘[a]n employee is not precluded from collecting workers’ compensation benefits even though the worker has a preexisting condition, if the employment aggravates, accelerates, or combines with, a latent disease or infirmity to produce disability. Dunlop Tire Corp. v. Allen, 659 So.2d 637 (Ala.Civ.App.1995). “A preexisting condition that did not affect the employee’s work performance before the disabling injury is not considered, pursuant to the [Workers’ Compensation] Act, (to be a preexisting condition.” Id., at 639.’
“Cox v. North River Homes, 706 So,2d 743, 748 (Ala.Civ.App.1997) (emphasis added).”
Cranford, 989 So.2d at 1126.
In this case, Hanvey’s exposure to chemicals rendered her MG symptomatic and prevented her from performing work that she was able to do before the exposure; that is, it accelerated her disease to the point at which her physicians determined she could never perform manual labor again, even though the MG’ was under control with medication. Evidence also indicates that Hanvey is functionally illiterate and is not a suitable candidate for training for a desk job. Therefore, under the Workers’ Compensation Act, § 25-5-1 et seq., AIa.Code 1975, MA is responsible for providing Hanvey with workers’ compensation benefits for her permanent and total disability.
Because I conclude that substantial evidence supports the trial court’s decision to award Hanvey workers’ compensation benefits based on her permanent and total disability, I would not- hold the trial court in error and would instead affirm its judgment.